## UNITED STATES v. ROSENBERG et al.

### No. 36852.

District Court, E. D. New York.

Sept. 21, 1942.

Henry G. Singer, of Brooklyn, N. Y., for defendant Josef Rosenberg.

M. M. Kreindler, of New York City, for defendant Samuel Freier and others.

Harold M. Kennedy, U. S. Atty., of Brooklyn, N. Y. (James D. Saver, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for the United States.

CAMPBELL, District Judge.

This case comes before this Court on two exactly similar motions, and proposed demurrers, but made on behalf of different defendants, by defendants' attorneys, and were argued together, and one opinion will suffice.

The defendants, Josef Rosenberg, Samuel Freier, Fereno Weisz, Ernest Weisz, and Irene Weisz, move for leave to withdraw their pleas of not guilty, heretofore interposed by them to the indictment herein, and to substitute in place and stead thereof, a demurrer in the form suggested.

Permission to withdraw pleas, and file proposed demurrers, is granted, and I will consider the demurrers submitted.

The indictment contains but one count and charges the above named defendants with other defendants, and with persons named but not indicted with conspiracy to commit an offense against the United

States, towit: to violate Section 701, Title 50, U.S.C.A.Appendix.

The demurrers, in substance, read as follows:

1. That Title 50, United States Code Annotated Appendix Section 701, is unconstitutional, in that Congress has unlawfully and illegally delegated its legislative powers to the President of the United States.

2. That the proclamation of the President made on July 2nd, 1940, pursuant to the aforesaid statute and the regulations promulgated by executive order on the same day are null and void.

3. That the proclamation and regulations of the President, especially in respect to the part referred to as "platinum group metals" is void for indefiniteness and uncertainty.

4. That the indictment is duplicitous.

5. That the indictment does not state a crime in that

a. Title 18, United States Code Annotated, Section 88, contains no provision making it illegal to conspire to violate a proclamation or regulation.

b. Title 50, United States Code Annotated Appendix, Section 701, does not extend beyond June 30, 1942, in that the indictment does not allege that Congress has extended this authority beyond June 30, 1942.

c. The indictment does not set forth sufficient facts to constitute a conspiracy to violate Title 50, United States Code Annotated Appendix, Section 701.

The indictment in question was returned by the 1942 April Grand Jury on April 14th, 1942, and in substance, charges that on or about and between the first day of February 1941, up to and including the fourteenth day of April 1942, the defendants did unlawfully, willfully and knowingly, combine, confederate, conspire and agree together with others (therein described) to violate the provisions of Section 701, Title 50, U.S.C.A.Appendix, pertaining to the prohibition or curtailment of exportation of military equipment or supplies, or component parts thereof, except under such rules and regulations as shall be prescribed by the President, and the regulations and proclamation duly promulgated thereunder by the President of the United States (No. 2413) providing that on and after July 5th, 1940, articles and materials hereinafter listed shall not be exported from the United States, except when authorized in each case by license duly issued and authorized; "q.— Platinum group metals", by purchasing platinum in this country and exporting such platinum, in violation of said statute, in that the defendants did conspire to purchase or cause to be purchased platinum in the United States and cause the shipment and exportation of said platinum from the United States destined to nations located in Continental Europe, particularly Portugal, through the medium of crew members employed on various vessels or steamships plying between the United States and Portugal, and by means of crew members employed on the Pan American Clipper flying from New York to Lisbon, Portugal; all in violation of Title 18, U.S.C.A. § 88.

The Act of July 2nd, 1940, c. 508, 54 Stat. 714, § 6, 50 U.S.C.A.Appendix, § 701, provides as follows:

"§ 701. Prohibition or curtailment of exportation of military equipment or supplies; penalties

"Whenever the President determines that it is necessary in the interest of national defense to prohibit or curtail the exportation of any military equipment or munitions, or component parts thereof, or machinery, tools, or material, or supplies necessary for the manufacture, servicing, or operation thereof, he may by proclamation prohibit or curtail such exportation, except under such rules and regulations as he shall prescribe. Any such proclamation shall describe the articles or materials included in the prohibition or curtailment contained therein. In case of the violation of any provision of any proclamation, or of any rule or regulation, issued hereunder, such violator or violators, upon conviction, shall be punished by a fine of not more than $10,000, or by imprisonment for not more than two years, or by both such fine and imprisonment. The authority granted in this section shall terminate June 30, 1942, unless the Congress shall otherwise provide."

Grounds 1 and 2 of the demurrer are based on the contention that the act in question is unconstitutional, as it is based on an unlawful and illegal delegation by the Congress of its legislative powers to the President, and in support of their contention, the defendants cite as authority therefor, A. L. A. Schechter Poultry Corp. et al. v. United States, 295 U.S. 495,

55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947; United States v. Butler et al., Receivers of Hoosac Mills Corp., 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914.

A. L. A. Schechter Poultry Corp. et al. v. United States, supra, was based on the National Industrial Recovery Act, and United States v. Butler et al., Receivers of Hoosac Mills Corp., supra, was based on the Agricultural Adjustment Act, both relating to internal affairs and unrelated directly to national defense. Both acts were held to be unconstitutional, as there was committed by those acts to the President the making of the plan, establishment of standards, and that clearly distinguishes them from the act here in question, where the whole policy establishment of standards and plan, is developed by the act in question, and only the time, and which of the commodities described by Congress is to be prohibited or curtailed from exportation is to be determined by the President.

In our consideration of this question, we must not forget that there is a wide difference between the grant of power to the President in matters that are of internal control, and those affecting our dealings as a nation with foreign nations, where the President is the representative of this nation, and who could more properly decide, for our national defense, which of certain articles described by the Congress, should not be exported or their exportation curtailed, than the Commander in Chief of our Army and Navy?

The defense of this country must not be required to await armed attack, but must be prepared for when we are threatened.

That was the purpose of the Congress, which stated its policy, established the standards, and made a complete plan, and did not grant legislative powers to the President, but only the power to determine as a fact which of the articles described by the Congress should not be exported or their exportation curtailed.

■ The act is constitutional. Panama Refining Co. et. al. v. Ryan et al., 293 U. S. 388, 55 S.Ct. 241, 79 L.Ed. 446; United States v. Curtiss-Wright Export Corp., 299 U.S. 304, 57 S.Ct. 216, 81 L.Ed. 225; Field v. Clark, 143 U.S. 649, 12 S.Ct. 495, 36 L.Ed. 294; United States v. Tishman, 7 Cir., 99 F.2d 951; United States v. Goldsmith et al., 2 Cir., 91 F.2d 983, certiorari denied 302 U.S. 718, 58 S.Ct. 38, 82 L.Ed. 555; Campbell v. Chase Nat. Bank of City of New York, D.C., 5 F. Supp. 156, certiorari denied 293 U.S. 592, 55 S.Ct. 108, 79 L.Ed. 686.

In Panama Refining Co. et al. v. Ryan et al., supra, an action based on the National Industrial Recovery Act the question of the right of Congress to delegate power to the President is considered at length and the prior decisions analysed.

United States v. Curtiss-Wright Export Corp., supra, seems to me to be directly in point. In that case the Joint Resolution there in question, was held to be constitutional, and the exercise of the President's power under the resolution was held to be proper and valid. By the Joint Resolution of May 28, 1934, 48 Stat. 811, there in question, Congress provided that if the President found that the prohibition of the sale of arms of war in the United States to those countries then engaged in armed conflict in the Chaco might contribute to the reestablishment of peace between those countries at war, he might proclaim to the effect that it should be unlawful to sell, except under such limitations and exceptions as the President might prescribe, any arms or munitions of war in any place in the United States to the countries then engaged in that armed conflict, or to any person, until otherwise ordered by the President or by Congress. The President thereafter made his proclamation, No. 2087, 48 Stat. 1744.

In Field v. Clark, supra, in which the constitutionality of an act which empowered the President to reduce the revenue and equalize duties on imports, the Supreme Court clearly pointed out the distinction between making laws, and the ascertaining and declaring by the President the event upon which the expressed will of the Congress was to take effect.

In United States v. Tishman, supra, and United States v. Goldsmith et al., supra, which were concerned with an Internal Revenue Statute (now Title 26, U.S.C.A. Int.Rev.Code § 2811), Congress empowered Treasury officials to decide which materials might be used in the manufacture of alcohol, and what regulations such Commissioners might pass in pursuance of said statute. Congress retained the legislative power, but left the administrative details to the sound discretion of those whose duty it was, to see

that the laws passed by Congress, were enforced.

If Congress can constitutionally pass such a statute for taxing purposes, it certainly can constitutionally pass such a statute as the one here in question, where the National Defense of the United States, is involved.

The proclamation promulgated by the President, and the regulations prescribed pursuant thereto under the authority of "An Act to expedite the strengthening of the national defense", 54 Stat. 712, attacked as null and void by the defendants in the second ground of their demurrer, was a valid and effectual proclamation, and the regulations were likewise valid and effective. United States v. Curtiss-Wright Export Corp., 299 U.S. 304, 57 S.Ct. 216, 81 L.Ed. 225.

The contention of the defendants in their third ground of their demurrers, that the proclamation and regulations of the President are void for indefiniteness and uncertainty, especially in respect to that part referred to as platinum group metals, is not sustained. Platinum is defined in the regulations as platinum group metals and alloys. This clearly is intended to include all metals in which platinum, or platinum and alloys is found, and in fact, that is found to be necessary for the accomplishment of the purposes of the statute, which was to prevent the exportation of any platinum or to curtail its exportation, if the President should determine that to be necessary in the interest of National Defense, and there is no indefiniteness or uncertainty in that construction. British-American Tobacco Co., Limited, v. Federal Reserve Bank of New York, 2 Cir., 104 F.2d 652.

The indictment is not duplicitous. That clearly appears on the face of the indictment.

I see no necessity to enter into any consideration as to whether a conspiracy to violate a proclamation or regulation is a crime, as that question does not arise in this case.

The conspiracy charged in the indictment herein, is to commit an offense against the United States, towit: to violate Section 701, 50 U.S.C.A.Appendix, and that properly charges a violation of Title 18, Section 88 U.S.C.A. Haywood et al. v. United States, 7 Cir., 268 F. 795,

cited on behalf of defendants, does not determine adversely to the contention of the Government in the case at bar.

The contention of the defendants that the indictment does not state a crime, in that Title 50, U.S.C.A.Appendix, § 701, does not extend beyond June 30th, 1942, in that the indictment does not allege that Congress has extended the authority beyond June 30th, 1942, finds no support in law or fact.

The act of July 2, 1940, as originally enacted, provided in Section 6 "The authority granted in this section shall terminate June 30, 1942, unless the Congress shall otherwise provide."

The authority did not terminate on June 30, 1942, nor was the original act repealed.

Congress did otherwise provide by Public Law 638, 77th Congress Chapter 461, 2d Session, S. 2558, approved June 30, 1942, 50 U.S.C.A.Appendix, § 701, which amended said Section 6, in so far as it is necessary for consideration at this time, to read as follows:

"Sec. 6. * * *

"(d) The authority granted by this section shall terminate on June 30, 1944 or upon any prior date which the Congress by concurrent resolution, or the President, may designate; except that as to offenses committed, or rights or liabilities incurred prior to such date, the provisions of this section and such rules, regulations, and proclamations shall be treated as remaining in effect for the purpose of sustaining any suit, action, or prosecution with respect to such right, liability, or offense."

The right to continue the prosecution of this action never was lost. Incidentally, the amendatory act was approved after this indictment was found.

The following cases, cited on behalf of the defendants, Massey v. United States, 291 U.S. 608, 54 S.Ct. 532, 78 L.Ed. 1019 and Green v. United States, 9 Cir., 67 F.2d 846, are not in point, as they relate to prosecutions attempted to be continued under the National Prohibition Act, 27 U.S.C.A. § 1 et seq., after that act had been repealed, whereas, in the case at bar, the original act by amendment, is still in full force and effect.

The demurrers are each of them, in each and every respect, overruled and the

said defendants are required again to plead and proceed to trial on September 23rd, 1942, at the time and place to which such trial has heretofore been adjourned.