## UNITED STATES v. 251 LADIES DRESSES et al.
### No. 177.

District Court, S. D. Texas, Brownsville Division.

Aug. 6, 1943.

Douglas W. McGregor, U. S. Atty., and W. F. Leigh, Asst. U. S. Atty., of Houston, Tex., and Charles C. Bowie, Asst. U. S. Atty., of Brownsville, Tex., for the United States.

J. T. Canales and O. B. Garcia, both of Brownsville, Tex., for claimants.

KENNERLY, District Judge.

This is a suit by the United States of America under the Act of June 15, 1917, 40 Stat. 223 et seq., and Amendments, Sections 401 to 410, 22 U.S.C.A., to condemn 251 Ladies Rayon Dresses (Synthetic Textiles) and one three-quarter ton 1941 Ford Pickup Truck, seized in this District and Division May 6, 1942, under such act and amendments. Fortunato Ramirez has intervened, claiming the dresses, and Refael Ramirez has intervened, claiming the truck.

The case has been heard on stipulation, with some oral and documentary evidence. The facts shown by the stipulation are as follows:

(a) "It is agreed that the 251 Dresses mentioned in the libel were dresses of all sizes, but all made of rayon.

"It is agreed that at the time that Claimant Fortunato Ramirez purchased said dresses in Laredo, they were intended to be exported to Mexico.

"It is agreed that at the time the dresses were seized by the officers, the same were being transported from Laredo, in Webb County, Texas, to El Fronton Ranch, in Starr County, where the claimant resides, and the goods were to be taken to his home, to be stored, to be later taken from said El Fronton Ranch to Monterey, Mex-

ico, and that the goods were seized at or about one o'clock p.m. on a road leading from the highway from Roma to Laredo to the El Fronton Ranch and a short distance from the claimant's home.

"It is agreed that claimant Rafael Ramirez is the owner of the truck sought to be forfeited and that such truck was being used in the transportation of said merchandise from Laredo to El Fronton Ranch at the time of seizure.

"The foregoing stipulation is hereby entered into by and between the attorneys of record for the United States of America and for the claimants in said Civil Action, and that such stipulation may be filed in said action in the trial of this cause by either party."

In addition, the evidence shows:

(b) That there was an understanding or agreement between Rafael Ramirez, the owner of the truck, and Fortunato Ramirez, the owner of the dresses, that the dresses would be transported from Laredo, Texas, to the home of Fortunato Ramirez or Rafael Ramirez, or other suitable place, in Texas, but near the border (Rio Grande) between the United States and Mexico, and then smuggled into Mexico, i.e., taken out of the United States without declaring same and without a license or other permit and in violation of the Laws and Executive Regulations of the United States.

Also it was shown that at the time the dresses were seized, they were in such truck, and Fortunato Ramirez and Rafael Ramirez were then and there attempting to carry out, and in the act of carrying out, such arrangement and agreement.

1. The Act of July 2, 1940, 54 Stat. 712 et seq., was enacted at a time when war was imminent, and shows on its face that it was "To expedite the strengthening of the national defense." Section 6 thereof is as follows: "Whenever the President determines that it is necessary in the interest of national defense to prohibit or curtail the exportation of any military equipment or munitions, or component parts thereof, or machinery, tools, or material, or supplies necessary for the manufacture, servicing, or operation thereof, he may by proclamation prohibit or curtail such exportation, except under such rules and regulations as he shall prescribe. Any such proclamation shall describe the articles or materials included in the prohibition or curtailment contained therein. In case of the violation of any provisions of any proclamation, or of any rule or regulation, issued hereunder, such violator or violators, upon conviction, shall be punished by a fine or not more than $10,000, or by imprisonment for not more than two years, or by both such fine and imprisonment. The authority granted in this section shall terminate June 30, 1942, unless the Congress shall otherwise provide."

The purpose of Section 6 was to prevent the exportation of certain articles needed here in the national defense, or which if exported could be used against or in an attack upon the nation. It was left for Executive decision as to what articles came within the bounds of Section 6. The Government says that Ladies Rayon (Synthetic) Dresses are within such bounds, and that the President could under such Act lawfully prohibit or curtail their exportation. This, claimants deny.

From an examination of the various Proclamations and Orders of the President and Orders issued by others by and under authority of the President based on the Act of July 2, 1940,[1] it appears that the exportation of substantially all Synthetic Textiles, including dresses, was prohibited or curtailed at the time of the seizure of the dresses involved herein. And I think such Proclamations and Orders are valid and are well within the bounds of the Act.

The Law is so well and clearly stated by Judge Campbell in a case somewhat similar to this and which arose under such Act (United States v. Rosenberg, D.C., 47 F. Supp. 406, 408) that I quote therefrom:

"In our consideration of this question, we must not forget that there is a wide difference between the grant of power to the President in matters that are of internal control, and those affecting our dealings as a nation with foreign nations, where the President is the representative of this nation, and who could more properly decide, for our national defense, which of certain articles described by the Con-

---

[1] Some of these are 6 Fed.Reg., pg. 1501 and pg. 4231. 7 Fed.Reg. pgs. 1492 and 1493. Comprehensive Export Control Schedules No. 5, pg. 62 (January and February 1942), No. 6, pg. 62 (March and April 1942), and No. 7, pg. 63 (May and June 1942).

gress, should not be exported or their exportation curtailed, than the Commander in Chief of our Army and Navy?

"The defense of this country must not be required to await armed attack, but must be prepared for when we are threatened.

"That was the purpose of the Congress, which stated its policy, established the standards, and made a complete plan, and did not grant legislative powers to the President, but only the power to determine as a fact which of the articles described by the Congress should not be exported or their exportation curtailed."

■ 2. But claimants say that the authority granted the President under Section 6 of the Act of July 2, 1940, terminated June 30, 1942, and that the property involved herein should for that reason have been and should now be surrendered to claimants. Claimants' position, however, is without support when there is examined the plain provisions of the Act of June 30, 1942, 50 U.S.C.A. Appendix § 701,[2] amending Section 6 of the Act of July 2, 1940, and continuing it in force. United States v. Rosenberg, supra.

3. Claimants also say that both the Act of July 2, 1940, and the Act of June 30, 1942, carried penalties for their violations, i.e., a fine of not more than $10,000, or imprisonment for not more than two years, or both such fine and imprisonment, and that Congress did not intend that property seized under violations of such acts should be forfeited, and that same may not be

forfeited under the Act of June 15, 1917, and amendments, Sections 401 to 410, 22 U.S.C.A., under which this suit is brought.

■■ I think it is clear that Congress intended that the Act of July 2, 1940, and the Act of June 30, 1942, amendatory of Section 6 thereof, should be construed together and with the Act of June 15, 1917, and amendments, Sections 401 to 410, 22 U.S.C.A. And that where, as here, an attempt is made to export, ship from, or take out of the United States articles, the exportation of which is prohibited or curtailed under the Acts of July 2, 1940, and June 30, 1942, and Proclamations and Orders issued thereunder, same may be seized and forfeited under Sections 401 to 410, 22 U.S.C.A.

The only doubt is the contention of able counsel for claimants with respect to the meaning and scope of the opinion in United States v. Fernandez, 5 Cir., 254 Fed. 302, 303. In that case, the Government sued under Title VII of the Act of June 15, 1917, and not under Title VI of such Act, which is now, with amendments, Sections 401 to 410, 22 U.S.C.A., under which, as stated, this suit was brought. I think United States v. Fernandez, if applicable, is not controlling here.

■ From what has been said, it follows that the two hundred and fifty-one (251) Ladies Rayon (Synthetic) Dresses and the truck in which same were being transported should have been seized and should

---

[2] The Act of June 30, 1942, 56 Stat. 463, is as follows:—

"An Act

"To further expedite the prosecution of the war by authorizing the control of the exportation of certain commodities.

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That Section 6 of the Act of July 2, 1940 (54 Stat. 714) is hereby amended to read as follows:

"'Sec. 6. (a) The President is hereby authorized to prohibit or curtail the exportation of any articles, technical data, materials, or supplies, except under such rules and regulations as he shall prescribe.

"'(b) Unless the President shall otherwise direct, the functions and duties of the President under this section shall be performed by the Board of Economic Warfare.

"'(c) In case of the violation of any provision of any proclamation, rule, or regulation issued hereunder, such violator or violators, upon conviction, shall be punished by a fine of not more than $10,-000, or by imprisonment for not more than two years, or by both such fine and imprisonment.

"'(d) The authority granted by this section shall terminate on June 30, 1944 or upon any prior date which the Congress by concurrent resolution, or the President, may designate; except that as to offenses committed, or rights or liabilities incurred prior to such date, the provisions of this section and such rules, regulations, and proclamations shall be treated as remaining in effect for the purpose of sustaining any suit, action, or prosecution with respect to such right, liability, or offense.'

"Approved, June 30, 1942.'

now be forfeited in this suit to the United States of America.

Let a decree be drawn and presented accordingly.