## UNITED STATES v. 8 AUTOMOBILES.

### SAME v. 2 AUTOMOBILES.

### SAME v. 4 AUTOMOBILES.

Nos. 95, 100, Laredo Division.

No. 206, Brownsville Division.

District Court, S. D. Texas.

Sept. 28, 1943.

Douglas W. McGregor, U. S. Atty., W. Fred Leigh, Asst. U. S Atty., of Houston, Tex., and Charles C. Bowie, Asst. U. S. Atty., of Brownsville, Tex., for plaintiff.

Mann & Mann, of Laredo, Tex., and Neel, King & Rachal, of Corpus Christi, Tex., for claimant.

KENNERLY, District Judge.

No. 95 is a suit by the United States of America to condemn eight second-hand or used automobiles, No. 100 is a suit to condemn two second-hand or used automobiles, and No. 206 is a suit to condemn four second-hand or used automobiles, seized under the Act of June 15, 1917, 40 Stat. 223 et seq., and Amendments, Sections 401 to 410, 22 U.S.C.A. Otis McNabb, of Corpus Christi, Texas, hereinafter for brevity called Claimant, has intervened, claiming all of the automobiles.

Some evidence has been offered here, some facts have been stipulated, and by stipulation, the evidence in certain other cases is offered. Briefly the controlling facts are that the automobiles involved were at the time seized on or about December 7th and December 14th, 1942, the property of Benjamin Del Campo, Sr.,

an automobile dealer in the City of Mexico, Republic of Mexico, having been purchased for him in Toledo, Ohio, on or about November 27, 1942, by his agent or agents. It was the intention of Benjamin Del Campo, Sr., to export them to the Republic of Mexico for resale there. There is some claim that some of them, while purchased with funds of Benjamin Del Campo, Sr., were intended to be owned by others, but I do not think the facts sustain this contention, and I find to the contrary. After being so purchased in Ohio, the automobiles were brought to the Mexican Border to be exported to Mexico without a license or permit, and while the agents of Benjamin Del Campo, Sr., were attempting to so export them, they were seized. Intervenor now owns, under an assignment, all the interest of Benjamin Del Campo, Sr., therein.

1. It will be observed that under the Act of 1917 and amendments, Sections 401 to 410, 22 U.S.C.A., under which these automobiles were seized and under which the Government claims the right to forfeit them, and particularly under Section 401,[1] there must have been an attempt to export them, etc., *"in violation of law."* Claimant says that there was no law nor lawful regulation at the time of their seizure under which they could be lawfully seized and forfeited. This the Government denies and points to and seeks to justify their seizure and asks their forfeiture under the Act of July 2, 1940, 54 Stat. 712 et seq., and the Act of June 30, 1942, 56 Stat. 463, 50 U.S.C.A.Appendix § 701, and regulations promulgated thereunder. Several Executive Orders are particularly relied upon by the Government, i. e., No. 8839, dated July 30, 1941, establishing the Economic Defense Board,[2] and No. 8900, dated September 15, 1941, amendatory thereof.[3] Also Executive Order No. 8982, dated December 17, 1941, changing the name of the Economic Defense Board to the Board of Economic Warfare.[4] Also Order by the Executive Director, dated September 15, 1941.[5]

The Act of July 2, 1940, was enacted at a time when war was imminent, and shows on its face that it was "To expedite the strengthening of the national defense." Section 6 thereof is as follows: "Whenever the President determines that it is necessary in the interest of national defense to prohibit or curtail the exportation of any military equipment or munitions, or component parts thereof, or machinery, tools, or material, or supplies necessary for the manufacture, servicing, or operation thereof, he may by proclamation prohibit or curtail such exportation, except under such rules and regulations as he shall prescribe. Any such proclamation shall describe the articles or materials included in the prohibition or curtailment contained therein. In case of the violation of any provisions of any proclamation, or of any rule or regulation, issued hereunder, such violator or violators, upon conviction, shall be punished by a fine of not more than $10,000, or by imprisonment for not more than two years, or by both such fine and imprisonment. The authority granted in this section shall terminate June 30, 1942, unless the Congress shall otherwise provide."

In United States of America v. Two Hundred Fifty-One Ladies Dresses and a Ford Pickup Truck in this court, decided August 6, 1943, 53 F.Supp. 772, the seizure was at a time (May 6, 1942) when

---

[1] Section 401 is as follows, *underscoring* mine:—

"§ 401. Seizure of war materials intended for unlawful export generally; forfeiture.

"Whenever an attempt is made to export or ship from or take out of the United States any arms or munitions of war, or other articles, *in violation of law,* or whenever there shall be known or probable cause to believe that any such arms or munitions of war, or other articles, are being or are intended to be exported, or shipped from, or taken out of the United States, *in violation of law,* the several collectors, comptrollers of customs, surveyors, inspectors of customs, and marshals, and deputy marshals of the United States, and every other person duly authorized for the purpose by the President, may seize and detain any articles or munitions of war about to be exported or shipped from, or taken out of the United States, in violation of law, and the vessels or vehicles containing the same, and retain possession thereof until released or disposed of as directed in sections 402–408 of this title. If upon due inquiry as provided in such sections the property seized shall appear to have been about to be so unlawfully exported, shipped from, or taken out of the United States, the same shall be forfeited to the United States."

[2] Federal Register, Vol. 6, pg. 3823.

[3] Federal Register, Vol. 6, pg. 4795.

[4] Federal Register, Vol. 6, pg. 6530.

[5] Federal Register, Vol. 6, pg. 4818.

clearly ·the Act of July 2, 1940, was in force, and it was there held that the property seized should be forfeited.

But here the seizure occurred in December, 1942, after the effective date of the Act of June 30, 1942, 56 Stat. 463, 50 U. S.C.A.Appendix § 701. Such Act is as follows:

"An Act

"To further expedite the prosecution of the war by authorizing the control of the exportation of certain commodities.

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That section 6 of the Act of July 2, 1940 (54 Stat. 714) is hereby amended to read as follows:

"'Sec. 6. (a) The President is hereby authorized to prohibit or curtail the exportation of any articles, technical data, materials, or supplies, except under such rules and regulations as he shall prescribe.

"'(b) Unless the President shall otherwise direct, the functions and duties of the President under this section shall be performed by the Board of Economic Warfare.

"'(c) In case of the violation of any provision of any proclamation, rule, or regulation issued hereunder, such violator or violators, upon conviction, shall be punished by a fine of not more than $10,-000, or by imprisonment for not more than two years, or by both such fine and imprisonment.

"'(d) The authority granted by this section shall terminate on June 30, 1944 or upon any prior date which the Congress by concurrent resolution, or the President, may designate; except that as to offenses committed, or rights or liabilities incurred prior to such date, the provisions of this section and such rules, regulations, and proclamations shall be treated as remaining in effect for the purpose of sustaining any suit, action, or prosecution with respect to such right, liability, or offense.'

"Approved, June 30, 1942."

Without doubt, the Act of July 2, 1940, did not expire June 30, 1942, but was amended and continued in force by the Act of June 30, 1942. United States v. Two Hundred Fifty-one Ladies Dresses, supra. United States v. Rosenberg, D.C., 47 F.Supp. 406, 408. United States v.

Bareno, D.C., 50 F.Supp. 520, 522. It is, therefore, only necessary to find whether the exportation of second-hand or used automobiles without a license was, under authority thereof, curtailed or prohibited by the President or under his authority.

The Government points to the three Orders of June 30, 1942 (Federal Register, Vol. 7, pg. 4951, Sections 800.3, 800.55, and 800.56), and to the further detailed Order of June 30, 1942, of F. R. Kerr, Chief of the Export Control Branch (Federal Register, Vol. 7, pages 4952 to 5019, Sections 801.1 to 807.12). It there clearly appears that the exportation of these automobiles without a license was prohibited under the Act of July 2, 1940, as amended by the Act of June 30, 1942.

Claimant's contention with respect to the authority of Kerr, Chief of the Export Control Branch, to make the detailed Order of June 30, 1942, is not meritorious. United States v. Bareno, supra.

2. The only remaining question raised is whether Claimant should be allowed to pay the costs and expenses and give bond and have possession of the automobiles under Section 405. The facts here, in my opinion, do not require nor do they justify such procedure.

Judgment for the United States of America.