UNITED STATES v. TWO HUNDRED AND SIXTY-SEVEN TWENTY-DOLLAR GOLD PIECES.

SAME v. ONE McLAUGHLIN AUTOMOBILE, NO. 438020.

(District Court, W. D. Washington, N. D.    January 23, 1919.)

Nos. 4233, 4250.

1. WAR ⬠5—ESPIONAGE ACT—FORFEITURE OF PROPERTY ABOUT TO BE UNLAWFULLY EXPORTED—"SHALL."

The provision of Espionage Act June 15, 1917, tit. 6, § 2 (Comp. St. 1918, § 7678e), that the officer seizing property as about to be unlawfully taken out of the United States shall apply within ten days to the District Judge for a warrant to justify its further detention, otherwise "the property shall forthwith be restored to the owner," is mandatory, and, if such application is not made within the time limited, the owner is entitled to return of the property.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Shall.]

---

2. STATUTES ☞227, 239—CONSTRUCTION—STATUTES IMPOSING FORFEITURES.
    A statutory power to divest an owner of his property is to be strictly construed, and where the statute prescribes the procedure such provisions are mandatory.

Forfeiture under Espionage Act. Libels by the United States against Two Hundred and Sixty-Seven Twenty-Dollar Gold Pieces, coin of the United States, and against One McLaughlin Automobile, No. 438020. On exceptions to libels by Lauretta M. Lesage, claimant. Exceptions sustained.

Ben L. Moore and Robt. C. Saunders, U. S. Dist. Atty., both of Seattle, Wash., for libelant.

Farrell, Kane & Stratton, of Seattle, Wash., for claimant.

NETERER, District Judge. Two libels are filed, one against 267 $20 gold pieces, and one against one McLaughlin automobile. The same facts are alleged with relation to both cases. The cases were presented together. In substance, it is contended by the libelant that the automobile was owned and operated by Lesage on August 30, 1918, and that by the use of said automobile, he did willfully and feloniously attempt to export out of the United States at the port of Blaine, Wash., into the province of British Columbia, the gold pieces, coin of the United States, without having first made application to a Federal Reserve Bank, etc., in violation of Espionage Act June 15, 1917, c. 30, 40 Stat. 217, and executive orders pursuant thereto; that at Blaine the said automobile was seized, together with the 267 $20 gold pieces. The libel to forfeit the gold pieces was filed on the 17th of September, and the libel to condemn the automobile was filed on the 18th of September, 1918. On the 23d of September following Lauretta M. Lesage appeared and filed claim for ownership, stipulations for costs and exception to the libel filed against the automobile, and on the 26th the same party appeared and filed a claim of ownership for the gold pieces and also stipulations for costs and exceptions to the libel. The exceptions in substance are that the libel fails to state a cause of action against either the gold or the automobile; that the persons making the seizure did not, within 10 days after making the seizure, or at all, apply to the District Judge of the district having jurisdiction for a warrant to justify further detention; that the libels were prematurely filed; that the claimant owner is entitled to have the property returned, and that the officers have no right to the possession or any lien thereon.

[1] The claimant contends that a strict compliance with the statutory method of procedure outlined in title 6 of the Espionage Act is a condition precedent to a prosecution in rem for a forfeiture. The libelant contends that these provisions of the statute are directory and cumulative, and that they are in no sense jurisdictional.

The proclamations, regulations, and orders of the President, issued pursuant to section 1, title 7, of the Espionage Act (Comp. St. 1918, § 7678a), prohibit the exportation of gold to the Dominion of Canada, without a license from the Federal Reserve Bank, except certain

amounts much less than the amount at issue. Section 2 of title 7, supra (section 7678b), makes it a criminal offense to export gold in violation of any regulation made, and also provides "that any article delivered for exportation * * * shall be forfeited," and section 1 of title 6, supra (section 7678a), provides:

"Whenever an attempt is made to export * * * articles * * * in violation of law * * * inspectors of customs * * * may seize and detain any articles * * * about to be exported * * * and the * * * vehicles containing the same, and retain possession thereof until released or disposed of as hereinafter directed."

### Section 2, supra (section 7678e), provides that:

"It shall be the duty of the person making any seizure under this title, to apply, with due diligence, to the judge of the District Court of the United States, * * * having jurisdiction over the place within which the seizure is made, for a warrant to justify the further detention of the property so seized * * * and if the judge refuses to issue the warrant, or application therefor is not made by the person making the seizure within a reasonable time, not exceeding ten days after the seizure, the property shall forthwith be restored to the owner or person from whom seized."

### Section 3 of the act, supra (section 7678f), provides:

"The owner or claimant * * * may, at any time before condemnation proceedings have been instituted, as hereinafter provided, file his application for its restoration in the District Court of the United States, * * * whereupon the Court shall advance the case for hearing and determination with all possible despatch, and after causing notice to be given to the United States attorney for the District and to the person making the seizure. * * *"

### Section 4 of the act, supra (section 7678g), provides:

"Whenever the person making any seizure under this title applies for and obtains a warrant for the detention of the property, and (a) upon the hearing and determination of the petition of the owner or claimant restoration is denied, or (b) the owner or claimant fails to file a petition for restoration within thirty days after the seizure, the United States Attorney for the District wherein it was seized, upon direction of the Attorney General, shall institute libel proceedings in the United States District Court * * * having jurisdiction over the place wherein the seizure was made, against the property for condemnation. * * *"

Section 5 of the act, supra (section 7678h), provides that the admiralty proceeding, as nearly as may be, shall be adopted, except that jury trials may be demanded. Concisely stated, the act provides that after seizure, within 10 days, the person making the seizure shall on oath or affirmation apply to the District Judge for a warrant to justify the detention of the seized property, and, if the judge refuses to issue the warrant, or application therefor is not made within 10 days after the seizure, the property shall forthwith be restored to the owner or person from whom seized.

[2] A statutory power to divest the owner of title to the property is here enacted, and I think the mode of procedure prescribed by the act creating this power is complete, and must be strictly construed, and that the provisions are mandatory as to the essence of the thing to be done. Franklin Glass Co. v. White, 14 Mass. 286; Monk v. Jenkins, 2 Hill's Eq. (S. C.) 9.

A new power was here created, and means to execute it provided. The statute expressly says he shall apply for a warrant within ten days after seizure, and, on failure, shall forthwith restore to the owner the property seized.

"Where a statute declares a thing shall be done, it is a peremptory mandate." Bouvier's Dictionary.

" 'Shall' ought undoubtedly to be construed as meaning 'must,' for the purpose of sustaining or enforcing an existing right." W. W. R. Co. v. Foley, 94 U. S. 100, at page 103 (24 L. Ed. 71).

While it is said in Railroad Co. v. Hecht, 95 U. S. 168, 24 L. Ed. 423, that as against the government, the word "shall," when used in statutes, is to be considered as "may," unless the contrary intention is manifest, here the contrary intention is manifest. Section 1 of title 6 expressly limits the government's retention of the "article" and the "vehicle" "until released" as "hereinafter directed," and further refers to due inquiry as "hereinafter provided." And section 4 limits the right to libel "until," "unless," "if," "only on," "upon," "then," "whenever," predicated upon requirements set out, and fixes 30 days within which no libel can be filed, and then only "upon direction of the Attorney General." The spirit of the law is pregnant with points of protection, as indicated by the apt words used.

I do not think that the contention of the libelant that the forfeiture attaches at the moment the gold was attempted to be exported in the automobile is sound. While the offense was completed at that moment, and prosecution could follow at any time within the statutory limitation, the criminal liability of the offender must not be confused with the statutory right of the government in the property. In this there is a distinction in the cases cited in support of the libelant's contention: U. S. v. Morgan, 222 U. S. 274, 32 Sup. Ct. 81, 56 L. Ed. 198, which is a criminal conviction under the Pure Food Law (U. S. Comp. St. 1918, § 8721). No condition is placed upon the government's right to present a criminal information under the Pure Food Act, but rather imposed a duty to proceed "without delay." No conditions and restrictions are present in that act, as appear in the act in question, and the only method by which the claimants under that law could obtain the property was by "payment of the costs of such libel proceedings and the execution and delivery of a good and sufficient bond." Section 8726, Comp. St. 1918, supra.

Forfeiture by original seizure depends entirely upon the statute. It may declare the forefeiture absolute upon seizure, or make the forfeiture depend upon certain conditions. U. S. v. Stowell, 133 U. S. 11, 10 Sup. Ct. 244, 33 L. Ed. 555.

Under Act March 2, 1799, c. 22, 1 Stat. 678, 3 Fed. St. Ann. 95, the right to libel was absolute, and not dependent upon statutory restrictions and conditions, and the return of a car used in violation of the act of 1874 could not be decreed prior to a declaration of forfeiture. U. S. v. One Certain Locomobile (D. C.) 242 Fed. 998. Whereas, by the 1917 act, by special provision of section 3, the owner has the right to petition a restoration at any time before condemnation proceedings to forfeit have been instituted, and condemnation

cannot be begun until after 30 days from date of seizure, and then "upon direction of the Attorney General."

The suggestion of the libelant that the provision for obtaining a warrant is merely for the protection of the officer making the seizure and to afford a summary remedy to the owner or claimant of the property, if an unreasonable detention might be attempted without any resort to legal proceedings to adjudicate the issues, and that it does not provide steps which must be taken by the government, I do not think to be well founded. Instead of looking to the protection of the officer, sections 2 and 4 bristle with provisions for the protection of private property, and require a speedy investigation of all facts with relation to the seizure by the officers, and require a prima facie case to be made, under oath, to the District Judge within 10 days. On failure so to do, "the property shall forthwith be restored to the owner or person from whom seized."

Two methods of procedure are provided; one "summary," the other "plenary." The summary method (section 3) may be by petition of the owner for restoration; and plenary, if the claimant's petition for restoration is denied, or the claimant fails to file a petition for restoration within 30 days after seizure, and then, upon direction of the Attorney General, libel proceedings shall be instituted. But, as a basis for either proceeding, a warrant shall be obtained from the District Judge within 10 days.

It is apparent that the various words of limitation as employed in this act were designedly used, and the intent appears clear to fix a time limit within which the government must move or return the property. It seems that no other conclusion can follow, and that, even if the Congress could and had intended to destroy a vested right, the limitations would not have been provided, and that it would have done so in clear language, from which there is no escape. Lincoln v. U. S., 202 U. S. 484, 26 Sup. Ct. 728, 50 L. Ed. 1117.

The language employed in the manner and form as set out in this act will not warrant the court in disregarding the express provisions of the act, and holding the "apt words" employed merely directory and cumulative.

The exceptions are sustained.