## UNITED STATES v. 21 LBS. 8 OZ. MORE OR LESS OF PLATINUM.

### Civ. No. 2026.

District Court, D. Maryland.

Jan. 14, 1944.

Bernard J. Flynn, U. S. Atty., of Baltimore, Md., for U. S.

William Curran, of Baltimore, Md., for claimant.

COLEMAN, District Judge.

This case is before the court on petition of Juan Tomas Bareno for restoration of a certain quantity of platinum, filed pursuant to Section 403 of Title 22 U.S.C.A. which is part of the Espionage Act of June 15th, 1917, 40 Stat. 217, 223.

In order that Section 403 may be properly understood it is appropriate to quote not merely that Section but also Sections 401, 402, 404 and 405 of the same Act, as follows:

Sec. 401: "Whenever an attempt is made to export or ship from or take out of the United States any arms or munitions of war, or other articles, in violation of law, or whenever there shall be known or probable cause to believe that any such arms or munitions of war, or other articles, are being or are intended to be exported, or shipped from, or taken out of the United States, in violation of law, the several collectors, comptrollers of customs, surveyors, inspectors of customs, and marshals, and deputy marshals of the United States, and every other person duly authorized for the purpose by the President, may seize and detain any articles or munitions of war about to be exported or shipped from, or taken out of the United States, in violation of law, and the vessels or vehicles containing the same, and retain possession thereof until released or disposed of as directed in sections 402–408 of this title. If upon due inquiry as provided in such sections the property seized shall appear to have been about to be so unlawfully exported, shipped from, or taken out of the United States, the same shall be forfeited to the United States."

Sec. 402: "It shall be the duty of the person making any seizure under sections 401–408 of this title to apply, with due diligence, to the judge of the district court of the United States, or to the judge of the United States district court of the Canal Zone, or to the judge of a court of first instance in the Philippine Islands, having jurisdiction over the place within which the seizure is made, for a warrant to justify the further detention of the property so seized, which warrant shall be granted only on oath or affirmation showing that there is known or probable cause to believe that the property seized is being or is intended to be exported, or shipped from or taken out of the United States in violation of law; and if the judge refuses to issue the warrant, or application therefor is not made by the person making the seizure within a reasonable time, not exceeding ten days after the seizure, the property shall forthwith be restored to the owner or person from whom seized. If the judge is satisfied that the seizure was justified under the provisions of sections 401–408 of this title, and issues his warrant accordingly, then the property shall be detained by the person seizing it until the President, who is hereby expressly authorized so to do, orders it to be restored to the owner or claimant, or until it is discharged in due course of law on petition of the claimant, or on trial of condemnation proceedings, as provided in sections 403–408 of this title."

Sec. 403: "The owner or claimant of any property seized under sections 401–408 of this title may, at any time before condemnation proceedings have been instituted, as provided in sections 404–408 of this title, file his petition for its restoration in the district court of the United States, or the district court of the Canal Zone, or the court of first instance in the Philippine Islands, having jurisdiction over the place in which the seizure was made, whereupon the court shall advance the cause for hearing and determination with all possible dispatch, and, after causing notice to be given to the United States attorney for the district and to the person making the seizure, shall proceed to hear and decide whether the property seized shall be restored to the petitioner or forfeited to the United States."

Sec. 404: "Whenever the person making any seizure under sections 401–408 of this title applies for and obtains a warrant for the detention of the property, and (a) upon the hearing and determination of the petition of the owner or claimant restoration is denied, or (b) the owner or claimant fails to file a petition for resto-

ration within thirty days after the seizure, the United States attorney for the district wherein it was seized, upon direction of the Attorney General, shall institute libel proceedings in the United States district court or the district court of the Canal Zone or the court of first instance of the Philippine Islands having jurisdiction over the place wherein the seizure was made against the property for condemnation; and if, after trial and hearing of the issues involved, the property is condemned, it shall be disposed of by sale, and the proceeds thereof, less the legal costs and charges, paid into the Treasury: Provided, That the court shall order any arms and munitions of war so condemned delivered to the War Department of the United States."

Sec. 405: "The proceedings in such summary trials upon the petition of the owner or claimant of the property seized, as well as in the libel cases provided for in section 404 of this title, shall conform, as near as may be, to the proceedings in admiralty, except that either party may demand trial by jury of any issue of fact joined in such libel cases and all such proceedings shall be at the suit of and in the name of the United States: Provided, That upon the payment of the costs and legal expenses of both the summary trials and the libel proceedings provided for in section 404 of this title, and the execution and delivery of a good and sufficient bond in an amount double the value of the property seized, conditioned that it will not be exported or used or employed contrary to the provisions of sections 401–408 of this title, the court, in its discretion, may direct that it be delivered to the owners thereof or to the claimants thereof."

The Government denies claimant's right to restoration of the platinum for reasons that will be hereinafter stated. The material facts in the case, which have been stipulated, are as follows:

On or about October 6, 1942, agents of the Federal Bureau of Investigation arrested five persons, including the present claimant, engaged in an attempt to export some twenty one pounds of platinum from the Port of Baltimore, on board the Steamship Motomar, in violation of Section 701 of Title 50 U.S.C.Appendix, and the Presidential Proclamations and Executive Orders issued thereunder, prohibiting the exportation of platinum without a license. At the same time the platinum, found concealed aboard the vessel, was seized by the agents of the Federal Bureau of Investigation. The statute just referred to, commonly known as the Export Control Law, was enacted as Section 6 of the War Powers Act of July 2, 1940, Chapter 508, and is as follows: "(a) The President is hereby authorized to prohibit or curtail the exportation of any articles, technical data, materials, or supplies, except under such rules and regulations as he shall prescribe. (b) Unless the President shall otherwise direct, the functions and duties of the President under this section shall be performed by the Board of Economic Warfare. (c) In case of the violation of any provision of any proclamation, rule, or regulation issued hereunder, such violator or violators, upon conviction, shall be punished by a fine of not more than $10,000, or by imprisonment for not more than two years, or by both such fine and imprisonment. (d) The authority granted by this section shall terminate on June 30, 1944, or upon any prior date which the Congress by concurrent resolution, or the President, may designate; except that as to offenses committed, or rights or liabilities incurred prior to such date, the provisions of this section and such rules, regulations, and proclamations shall be treated as remaining in effect for the purpose of sustaining any suit, action, or prosecution with respect to such right, liability, or offense."

On January 19, 1943, all five persons, including the present claimant, were indicted in this district, for violating the requirements of Section 801.2 as amended, and Section 801.7 of the General Regulations of the Board of Economic Warfare, promulgated pursuant to Section 701 of Title 50 Appendix, just quoted, and also for conspiring so to do. Each of the defendants filed demurrers to the indictments which were duly heard and were overruled, for reasons set forth in a written opinion of this court (United States v. Bareno, 50 F.Supp. 520), from which there was no appeal. Thereupon four of the defendants, including the present claimant, plead guilty to the indictment and on July 7, 1943, were sentenced to pay fines varying in amounts, Bareno being fined $8,000 which has been paid. The case against the fifth defendant was nolle prossed. The seized platinum had meanwhile been retained in the custody of the Federal Bureau of Investigation, in the event that

it might become necessary to use it as evidence in the trial of the case.

On July 9, 1943, claimant made formal written demand of the United States attorney at Baltimore to return the platinum to him, which demand was refused, and on July 26, 1943, the Collector of Customs at Baltimore caused the custody of the platinum to be transferred to him by the Federal Bureau of Investigation, purporting to do so on authority of Section 401 of Title 22, already quoted. On July 30, 1943, the Collector petitioned this court to issue a warrant to justify the further detention by him of the platinum until such time as it might be ordered restored to the owner. or claimant thereof, or until otherwise disposed of according to law, pursuant to Section 402 of Title 22. The same day this court signed an order authorizing the Collector to retain possession of the platinum until the President of the United States might order its restoration to the owner or claimant thereof, or until discharged in due course of law on petition of the claimant, or on trial of the condemnation proceedings, as provided by Section 402. Finally, on August 10, 1943, claimant filed his petition asking that the platinum be returned to him.

The ground upon which claimant relies in seeking restoration of the platinum is that the alleged seizure of it by the Collector of Customs on July 26, 1943, was a mere colorable seizure and not within the language or intent of Section 401 of Title 22 U.S.C.A. because, (1) the platinum was taken by the Collector from the Federal Bureau of Investigation by an interdepartmental arrangement for its transfer long after the original seizure of the platinum by agents of the Federal Bureau of Investigation, and therefore at the time the Collector took possession of the platinum it was not "about to be exported or shipped from, or taken out of the United States, in violation of law,"—which is a condition precedent to the right on the part of a Collector of Customs to seize or detain any articles or munitions of war within the express language of Section 401 of Title 22; and (2) in any event, the Collector's application for the warrant was not made within ten days after the alleged seizure as required by Section 402 of Title 22.

The Government seeks to meet claimant's contention by the following arguments: First, the Government maintains that the action of the Federal Bureau of Investigation agents in taking custody of the platinum did not constitute a seizure, within the meaning of Sections 401, 405 of Title 22, because those agents are not persons authorized by Section 401 to make a seizure, and they were acting in furtherance of their duties under entirely different provisions of law and made no attempt to comply with the provisions of Title 22, Sections 401, 405. Second, the Government contends that even if the assumption of custody by the Federal Bureau of Investigation be treated as constituting a seizure within the meaning of Sections 401 and 402, that seizure was voluntarily abandoned and became a nullity, and therefore in no way limits the right of the Collector to seize the platinum and to proceeed in accordance with the provisions of Section 401, etc. Third, the Government contends that the Collector validly seized the platinum on July 26, 1943 and thereafter complied with all the procedural requirements justifying its detention up to the present time, looking towards its eventual forfeiture. Fourth, the Government contends that while admittedly it was impossible for the Collector to make an oath at the time of his application for a warrant that "the property seized is being or is intended to be exported or shipped from or taken out of the United States in violation of law", yet that phraseology should be interpreted as though it read, "that there is known or probable cause to believe that the property seized *was* being or *was* intended to be exported or shipped from or taken out of the United States in violation of law", since any other construction would result in it being rarely if ever possible to comply literally with the wording of the statute, once the property had actually passed out of the hands of the guilty person, that is, into the hands of some third person or Government agency, as in the present case. Fifth, where, as here, claimant has plead guilty to attempting to export the platinum in violation of law, the procedural requirements of Section 402 are impliedly not applicable, that is, the admitted violation on the part of claimant vested title to the platinum in the United States.

This much is clear from the language of Section 404, namely, application for the warrant within ten days of seizure is an absolute condition precedent to issuance of the warrant. That is to say, the

procedural steps as set forth in Section 404 can only be taken in the event that a warrant has first been obtained, and a warrant cannot be validly issued unless application for it has been "made by the person making the seizure within a reasonable time, not exceeding ten days after the seizure," otherwise "the property shall forthwith be restored to the owner or person from whom seized." (Section 402.)

Thus, from whatever aspect the present case may be approached, we return always to the basic question: When did the "seizure" occur within the contemplation of the statute? It seems too clear for argument that the only "seizure" occurring in the present case which can be said to have been within the contemplation of the statute, was the seizure of the platinum while in the possession of the claimant or his confederates. It was then, and only then, that the platinum was intended to be exported or taken out of the country. It is fanciful to say that once the agents of the Federal Bureau of Investigation took custody of the platinum, there was any intention that it should be exported or taken out of the country, for those agents assumed custody over it for the very purpose of preventing such taking place.

█ A logical theory is that the agents of the Federal Bureau of Investigation are to be treated as within the category of persons authorized to make seizures under Section 401, because they were, in effect, acting as agents of the Customs officials; or are to be treated as "other persons" impliedly, if not expressly, "authorized for the purpose by the President." However, such a theory would not give validity to the Government's position, because unless we are to ignore the mandatory requirement of Sections 401, 402, with respect to the time after the seizure within which the warrant shall be applied for, it matters not what theory be adopted; that is, whether, as the Government contends, the original seizure was abandoned and therefore need not be considered, or whether it be treated as, in fact, the only seizure within contemplation of the law, unless we are prepared to say that the mere interdepartmental transfer of the platinum from the Federal Bureau of Investigation to the Customs officials, was a "seizure",—a theory the mere statement of which we believe is obviously so fanciful as to amount to its own refutation.

█ To summarize, we conclude that the Government's inadvertence in not adhering strictly to the requirements of Section 402 with respect to the time within which application should have been made for a warrant, that is, within ten days after the seizure of the platinum by the agents of the Federal Bureau of Investigation, leaves the Government, in the present proceeding, without remedy. The fact that the platinum was, after the seizure, held for the purpose of being used, if and when necessary, as evidence in the trial of the criminal charge against the claimant and codefendants, does not cure the situation, for the seized property was not actually in custodia legis, and the statutory requirement must still be met. In the Government's petition, which was prepared in the name of the Collector of Customs at Baltimore and not filed until July 30, 1943,—nearly ten months after the platinum first came into the Government's hands,—the law is erroneously construed, and this court was also in error in issuing a warrant on that petition, in view of the facts as they are now more fully presented and understood.

It is not a sufficient answer that the result of our conclusion would appear to produce an anomalous situation in that a person who has plead guilty and paid a heavy penalty for violating the Export Control Law, in time of war, is, nevertheless, allowed to retain possession of the property which he sought to export illegally, and which, furthermore, is valuable in connection with the prosecution of the war.

█ As we have seen, the Export Control Law, enacted as part of the War Powers Act on July 2, 1940, makes no provision for seizure of property sought to be illegally exported. The Government admits that there is no statute under which the power of seizure could have been exercised except the one upon which the Government here relies, namely, Section 401 et seq. of Title 22, although Congress has provided for forfeiture in certain specified types of cases which we need not enumerate here. It may be conceded that this statute might well be amended, lengthening the time within which warrants may be applied for, so that in the future the Government will not be faced with a situation such as has occurred in the present case. However, the remedy is by Congressional action and cannot be brought

about by judicial amendment. A statutory power to divest an owner of his property is to be strictly construed, and where the statute prescribes the procedure, such provisions are mandatory. United States v. Two Hundred and Sixty-Seven Twenty-dollar Gold Pieces, D.C., 255 F. 217. Furthermore, claimant's right to retain the platinum remains subject to the Government's general power of condemnation, as well as the regulatory power of the Government as respects any sale or other disposition that claimant may attempt to make of the platinum.

█ It is to be noted that we rest our decision directly upon the point that by the mandatory language of the statute (Sec. 402) this court had no authority to issue the warrant, because application therefor came too late. Therefore, the provisions of Section 404 become inapplicable, even though that section provides that where a warrant has been obtained, libel proceedings shall be instituted when either restoration of the property has been denied on petition of the owner or claimant, or the owner or claimant has failed to file a petition for restoration within 30 days after the seizure. That is to say, we may assume that the present claimant's application for restoration of the platinum was itself made too late, since not filed until August 10, 1943, but we need not consider what would have been the result of this fact, had the warrant been a valid one.

An order will accordingly be signed, directing restoration of the platinum to the claimant.