UNITED STATES et al. v. 21 POUNDS, 8 OUNCES, OF PLATINUM.

No. 5265.

Circuit Court of Appeals, Fourth Circuit.

Jan. 3, 1945.

Allan B. Lutz, Atty., Department of Justice, of Washington, D. C. (Francis M. Shea, Asst. Atty. Gen., J. Frank Staley, of Washington, D. C., and Bernard J. Flynn, of Baltimore, Md., on the brief), for appellants.

William Curran, of Baltimore, Md., for appellee.

Before PARKER and SOPER, Circuit Judges, and HARRY E. WATKINS, District Judge.

SOPER, Circuit Judge.

This suit concerns the validity of a seizure by the Collector of Customs of Baltimore, Maryland, of 21 lbs. 8 oz. more or less of platinum which certain persons had conspired and attempted to export unlawfully from the United States to Spain. Agents of the Federal Bureau of Investigation, who had been informed of the conspiracy seized the platinum on board a ship in the Baltimore harbor on October 6, 1942 and retained it as evidence of violation of the Export Control Law of 1940, § 6 of the War Powers Act of July 2, 1940, Ch. 508, 54 Stat. 714, as amended by the Act of June 30, 1942, Ch. 461, 56 Stat. 463, 50 U.S.C.A. Appendix 701. The statute and the regulations issued thereunder* prohibit the exportation of platinum unless a license authorizing the exportation shall have been issued. Violation of the regulations is punishable by fine not exceeding $10,000 and imprisonment not exceeding two years or both. In this case the offenders were indicted for attempting to export the plati-

---

* Export Control Regulations of the Board of Economic Warfare, §§ 801.2 and 801.7 of June 30, 1942, Federal Register July 2, 1942, Volume 7, No. 129, pp. 4952 and 5001.

num without a license, pleaded guilty to the charge on July 7, 1943 and were fined in various amounts on July 8, 1943.

On July 9, 1943 Juan Tomas Bareno, one of the offenders who had been fined $8,000, made demand upon the United States Attorney for the return of the platinum. On July 26, 1943 the Collector of Customs at Baltimore, acting under the provisions of the Espionage Act of June 15, 1917, Title VI, Ch. 30, 40 Stat. 223, 22 U.S.C.A. §§ 401 to 407, seized the platinum by taking it into custody from the agents of the F.B.I. and on July 30, 1943 the Collector of Customs applied to the District Court for a warrant to justify the further detention of the seized property until such time as it might be ordered to be restored to the owner or otherwise disposed of according to law. On the same day the warrant was issued. Thereafter, on August 10, 1943 a petition for restoration was filed in the District Court by Bareno and after hearing in which the facts above recited were shown, the District Judge passed the order appealed from directing the delivery of the platinum to Bareno.

The propriety of this order depends upon the interpretation of §§ 1 and 2 of the Espionage Act, Tit. 6, 22 U.S.C.A. §§ 401 and 402. Section 401 provides that whenever an attempt "is made to export" from the United States any articles in violation of law, or whenever there shall be cause to believe that any such articles "are being or are intended to be exported" in violation of law, "the several collectors, comptrollers of customs, surveyors, inspectors of customs, and marshals, and deputy marshals of the United States, and every other person duly authorized for the purpose by the President," may seize and detain any articles "about to be exported" in violation of law and retain possession thereof until released or disposed of as directed in the succeeding sections of the Act. If, upon inquiry as provided in such sections, the property seized shall appear "to have been about to be so unlawfully exported", the same shall be forfeited to the United States.

Under § 402 of the statute it is made the duty of the person making the seizure to apply with due diligence to the Judge of the District Court which has jurisdiction over the place of seizure for a warrant to justify the detention of the property. The judge may grant the warrant only on oath or affidavit that there is known or probable cause to believe "that the property seized is being or is intended to be exported" in violation of the law. If the person making the seizure fails to make application for the warrant within a reasonable time not exceeding ten days after the seizure, or if the judge refuses to issue the warrant, the property shall forthwith be restored to the owner or person from whom seized. If the judge is satisfied that the seizure was justified under the Act and issues the warrant, the property shall be detained by the person seizing it until the President orders it restored to the owner or claimant or until it is discharged in due course of law on petition of the claimant or on trial of condemnation proceedings.

Section 403 provides that the owner or claimant may at any time before condemnation proceedings have been instituted under succeeding sections of the Act file a petition for restoration in the District Court whereupon the court, after notice to the United States Attorney and the person making the seizure, shall hear and decide whether the property seized shall be restored to the petitioner or forfeited to the United States.

Section 404 of the Act provides for condemnation proceedings by libel if the owner or claimant fails to file a petition for restoration within thirty days after seizure or if upon hearing a petition for restoration is denied; and § 405 provides that the proceedings on the trial of a petition for restoration or a libel for condemnation shall conform to proceedings in admiralty except that either party may have a trial by jury of any issue of fact.

The reasons given by the District Judge in his opinion for ordering the restoration of the platinum to the owner may be summarized as follows: The agents of the Federal Bureau of Investigation should be treated within the category of persons authorized to make seizure under § 401 of the Act because they were acting as agents of the customs officials or were "other persons" impliedly, if not expressly authorized, for the purpose by the President. The seizure by these agents on October 6, 1942 in the present case is the only seizure that comes within the contemplation of the Espionage Act for after that time the platinum was in the custody of the Government and was not intended to be taken out of the country. Thereafter, no exportation was contemplated. But the United States is not entitled to judgment of condemnation because, after making the seizure, it did not apply to the judge for a warrant of detention within ten days, as required by § 402

of the statute. The property, therefore, should have been returned forthwith to the owner. Since this was not done the court was obliged by § 403 to grant the owner's petition for restoration which was filed, as provided in § 402, before condemnation proceedings were instituted. The fact that the platinum was held as evidence in the criminal case against the owner and his co-defendants did not satisfy the requirements of the statute. The petition for the warrant of detention filed by the Collector of Customs on July 30, 1943, nearly ten months after the seizure by the agents of the F.B.I., came too late, and the warrant should not have been issued. On this account the provision for condemnation proceedings in § 404 of the Act has no application. The mere fact that the owner did not file the petition for restoration within thirty days after the seizure, as required by § 404, is immaterial. It is no answer to this line of reasoning that an anomalous situation has arisen in that one who has violated the Export Control Law and rendered his property liable to forfeiture under the Espionage Act is nevertheless permitted to recover possession of the property. An owner may not be divested of his property without the authority of statute; and the procedural provisions of such a statute are mandatory and must be strictly construed. See United States v. Two Hundred and Sixty-Seven Twenty-Dollar Gold Pieces, D.C.W.D. Wash., 255 F. 217. The only statute on which the United States can rely in this case is the Espionage Act and the conditions thereof have not been met. In this connection the court said [53 F.Supp. 971, 975]:

" * * * unless we are to ignore the mandatory requirement of Sections 401, 402, with respect to the time after the seizure within which the warrant shall be applied for, it matters not what theory be adopted; that is, whether, as the Government contends, the original seizure was abandoned and therefore need not be considered, or whether it be treated as, in fact, the only seizure within contemplation of the law, unless we are prepared to say that the mere interdepartmental transfer of the platinum from the Federal Bureau of Investigation to the Customs officials, was a 'seizure',— a theory the mere statement of which we believe is obviously so fanciful as to amount to its own refutation.

"To summarize, we conclude that the Government's inadvertence in not adhering strictly to the requirements of Section 402 with respect to the time within which application should have been made for a warrant, that is, within ten days after the seizure of the platinum by the agents of the Federal Bureau of Investigation, leaves the Government, in the present proceeding, without remedy. The fact that the platinum was, after the seizure, held for the purpose of being used, if and when necessary, as evidence in the trial of the criminal charge against the claimant and co-defendants, does not cure the situation, for the seized property was not actually in custodia legis, and the statutory requirement must still be met."

■ Our examination of the Espionage Act leads us to the conclusion that its dominant purposes are twofold: (1) To accomplish the forfeiture of property which has been the subject of an attempted exportation in violation of law; and (2) to protect innocent owners and claimants of seized property from unwarranted seizure and detention thereof. Not only does § 410 make the unlawful exportation a criminal offense, punishable by fine and imprisonment, but § 401 declares that the property shall be forfeited to the United States if, upon due inquiry, as provided in the Act, the property seized shall appear to have been about to be unlawfully exported. No one can doubt that forfeiture is provided as a penalty and preventive measure additional to the criminal sanction of the Act.

It is equally clear that Congress intended to protect an innocent owner from unwarranted interference with his property and therefore provided that any agent of the United States who makes a seizure in order to obtain a forfeiture must show that there is cause to believe that the property was intended for unlawful exportation by applying to the court for a warrant, supported by an affidavit. Obviously there was no practical need for a warrant and an affidavit to establish probable cause for the seizure by the F.B.I. in this case for offenders were arrested at the time of the seizure and given a preliminary hearing shortly thereafter wherein it was held that the offense had been committed and there was probable cause to believe that the defendants were guilty thereof. This finding was confirmed by the plea of guilty of all of the defendants on July 7, 1943.

■ Whether a proper foundation for the forfeiture of the platinum was laid depends upon the interpretation of the Espionage Act with its main purposes in view.

The case turns in large part upon the meaning of the word "seizure" contained in the several sections of the Act. The District Judge held in effect that the goods were seized within the meaning of the Act when the F.B.I. took custody of them on the ship in the Baltimore harbor on October 6, 1942; and it followed as a logical consequence that the requirements of the Act were not fulfilled because the application for the warrant and the affidavit were not filed within ten days thereafter. We do not think, however, that the statutory seizure was made at that time. It is true that the agents took and retained the goods on that date; but their seizure was made in connection with the arrest of certain of the offenders so that the goods might be used as evidence of a violation of the Export Control Law, 50 U.S.C.A.Appendix § 701. The right to take and retain the goods for this purpose cannot be questioned for it was their duty as prosecuting officers to seize any property connected with the crime and preserve it for use at the trial. See Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790; Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, L.R.A. 1915B, 834, Ann.Cas. 1915C, 1177; Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 71 L.Ed. 145, 51 A.L.R. 409; United States v. Lee, 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202; Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231; State of California v. Latimer, 305 U.S. 255, 59 S. Ct. 166, 83 L.Ed. 159; 4 Am.Jur. (Arrest) § 68.

▪ The Export Control Law, however, made no provision for the forfeiture of the goods and in order to secure a condemnation thereof by libel it was essential that a proceeding be instituted under the provisions of the Espionage Act. The agents of the F.B.I. were not qualified to proceed under this Act for under the terms of § 401, the authority to seize and to detain, for purposes of condemnation and forfeiture, was expressly conferred upon the several collectors, comptrollers of customs, surveyors, inspectors of customs and marshals and deputy marshals of the United States, and every other person duly authorized for the purpose by the President. The agents of the F.B.I. do not come within these categories and it is admitted by the parties that they had not been given special authority by the President to make seizures. Their powers are derived from statutes which empower the Attorney General to appoint officials for the detection and prosecution of crimes against the United States and for the acquisition and preservation of criminal identification records; and they are clothed with the authority necessary for the execution of their duties. See, 5 U.S.C.A. §§ 300, 300a to 300d, 340; Executive Order No. 6166 of June 10, 1933, § 3, 5 U.S.C.A. §§ 124–132 note. As such agents, they have the usual powers of arresting officers in respect to the detention of incriminating property, but they have no power to institute condemnation proceedings under the statute in question.

▪ In our opinion, the seizure, as the term is used in the statute, took place in this case when the Collector of Customs took possession of the platinum from the F.B.I. and began proceedings within a reasonable time, less than ten days, looking toward a forfeiture by libel of condemnation. The taking of goods into possession by the Collector did not lose its character as a statutory procedure because the goods were taken from the control of another government agency which, having performed its duty in the successful prosecution of the conspiracy, voluntarily gave up the goods. The case in this respect resembles very closely in principle the decision in The Josefa Segunda, 10 Wheat. 312, 6 L.Ed. 320, where a vessel originally boarded as a slaver by an inspector of revenue, was later boarded and seized by a customs officer and a military guard and was finally surrendered to the Collector of Customs of the port of New Orleans who seized her and prosecuted a libel of forfeiture. Conflicting claims to a moiety of the proceeds of the forfeited vessel, under the provisions of the Anti-Slave Trade Act, were made by the several persons who had boarded and taken possession of the vessel; and the Supreme Court held that as the original seizures were not followed up with proceedings for forfeiture, the only effective seizure within the meaning of the Act was the seizure by the Collector of Customs in his official capacity. This decision makes it clear that the taking of possession of property by one government agent does not necessarily invalidate a later seizure by another government agent acting in pursuance of statute. It follows that the prior possession of the F.B.I. in the exercise of their lawful authority to prosecute for crime did not invalidate or take the place of the subsequent seizure of the Collector of Customs for the purpose of forfeiture.

There is still another argument in support of the judgment of the District Court which must be considered. It grows out of the use of the present tense in §§ 401 and 402 of the statute in describing the intent to engage in an unlawful exportation. Section 401 speaks of the right to seize and detain goods "about to be exported" in violation of law when there is cause to believe that they "are being or are intended to be" unlawfully exported; and § 402 provides for the issuance of a warrant of detention upon affidavit that the property "is being or is intended to be exported" unlawfully. Giving these phrases a literal interpretation, the District Judge held that a present intent to export unlawfully existed with respect to the goods in question only when they were seized by the F.B.I. but did not exist when the goods were taken over by the Collector of Customs after the criminal case was finished. The court said:

"It seems too clear for argument that the only 'seizure' occurring in the present case which can be said to have been within the contemplation of the statute, was the seizure of the platinum while in the possession of the claimant or his confederates. It was then, and only then, that the platinum was intended to be exported or taken out of the country. It is fanciful to say that once the agents of the Federal Bureau of Investigation took custody of the platinum, there was any intention that it should be exported or taken out of the country, for those agents assumed custody over it for the very purpose of preventing such taking place."

We think that a literal interpretation of the statute is not permissible, for it leads to a result that Congress could not have intended. Under a literal interpretation a warrant for detention could never be issued and a condemnation of forfeiture could never be decreed. The statute contemplates first a seizure under § 401 and next, an application for a warrant of detention under § 402. Where a seizure has taken place, the goods are safely in the custody of a government agent and the possibility of an illegal exportation is at an end; so that it cannot be said that the property is then being exported or intended to be exported in violation of law, and it would be impossible to accompany the application for a warrant of detention with an affidavit showing an intention at the time to export the goods.

Furthermore, a forfeiture could not be had under a literal construction because the issuance of the warrant is the first step to be taken in a proceeding for condemnation, and § 402 says that if the judge refuses the warrant, the property shall be forthwith restored to the owner.

We must look, therefore, for a more reasonable interpretation, and it is found when the statute is construed to cover a seizure of property by agents of the United States designated in § 401, if at the time of the seizure the goods are in the custody of officers of the law, not so designated, who have previously taken custody of the goods in order to frustrate an existing intent or attempt to export them illegally, and if the designated officers apply within ten days after their seizure for a warrant of detention as provided in § 402. We think that under such circumstances the status of the goods as of the time of the seizure by the undesignated officers remains unchanged, and so long as the goods remain in their custody, they are subject to seizure for condemnation under the statute. It is established that proceedings for the forfeiture of goods may be maintained at the instance of authorized officials even if the goods were originally seized by an unauthorized person, since the subsequent adoption of the seizure is retroactive. Dodge v. United States, 272 U.S. 530, 47 S.Ct. 191, 71 L.Ed. 392. The procedure indicated is not barred by the ten day provision of § 402 for that limitation applies only to seizure by officers who are clothed with power to seize for condemnation and to take steps looking to that end.

There is no legal difficulty in giving this meaning to the statute for it is established that a thing may be within the letter of the statute and yet not within the statute because not within the spirit or legislative intent. "The reason of the law in such cases should prevail over its letter." Holy Trinity Church v. United States, 143 U.S. 457, 12 S.Ct. 511, 512, 36 L.Ed. 226; State of Maine v. United States, D.C.Me., 45 F.Supp. 35, affirmed, 1 Cir., 134 F.2d 574; United States v. Monstad, 9 Cir., 134 F.2d 986.

Moreover, it is well established that "statutes to prevent frauds upon the revenue are considered as enacted for the public good, and to suppress a public wrong, and therefore, although they impose penalties or forfeitures, not to be construed, like penal laws generally, strictly in favor of the defendant; but they are to be fairly and reasonably construed, so as to carry out the intention of the legislature." Unit-

84

ed States v. Stowell, 133 U.S. 1, 12, 10 S.Ct. 244, 245, 33 L.Ed. 555. See also, Johnson v. Southern Pacific Co., 196 U.S. 1, 17, 25 S.Ct. 158, 49 L.Ed. 363; United States v. A. Graf Distilling Co., 208 U.S. 198, 199, 205, 206, 28 S.Ct. 264, 52 L.Ed. 452; United States v. Ryan, 284 U.S. 167, 172, 52 S.Ct. 65, 76 L.Ed. 224. For like reasons, the Espionage Act of June 15, 1917, which was enacted for equally important public purposes, should be construed in a fair and reasonable manner.

Obviously, the construction herein given to the statute will serve its first purpose to penalize by forfeiture the unlawful exportation of goods, and it will also serve the second purpose that the proper interests of the owners of goods shall not be jeopardized. The Act applies only to seizures by the designated agents of the United States. If the goods are improperly detained by other agents, nothing in the Act as construed herein would prevent the owner from pursuing all remedies afforded him by the law for the unlawful detention of his property. In this case as we have seen, the detention of the goods prior to seizure under the Act was not unlawful and gave the owners no cause to complain. When, however, goods are seized by government agents designated in the Act, they must apply for a warrant of detention with due diligence and the owner has all the protection against unwarranted governmental action that the statute affords.

The judgment of the District Court is reversed and the case remanded for further proceedings.

Reversed and remanded.