## UNITED STATES v. ONE CADILLAC COUPE.

### SAME v. THREE CADILLAC COUPES et al.
### Civil Actions Nos. 202, 204.

District Court, S. D. Texas, Brownsville Division.

Sept. 26, 1945.

Brian S. Odem, U. S. Atty., and W. F. Leigh, Asst. U. S. Atty., both of Houston, Tex., and Chas. C. Bowie, Asst. U. S. Atty., of Brownsville, Tex., for plaintiff.

M. J. Raymond, of Laredo, Tex., and Roy Buckley, of Mission, Tex., for claimants.

HANNAY, District Judge.

This is a consolidated suit whereby the United States Government is seeking, in a civil action through libel proceedings, to secure the forfeiture of:

(a) One black 1941 Cadillac 5-passenger coupe, motor No. 5236394;

(b) Three Cadillac coupes, more particularly hereinafter described; and,

(c) One 1940 Ford Panel Body truck.

In the suits as originally filed, (a) was the subject matter of Cause No. 202 and

(b) and (c) were the subject matter of Cause No. 204.

(a) This automobile was purchased in Detroit, Michigan, by one Antoine A. Isaac for the account of General L. Hernandez, of Mexico. Said Hernandez and Isaac, at the time of such purchase, were, and still are, residents of the Republic of Mexico. Said Hernandez was then a General and a Congressman of said Republic. Said automobile was transported to McAllen, Hidalgo County, Texas, where it was first placed in storage. Thereafter, while said car was attempted to be crossed into Mexico via the bridge between Reynosa, Tamaulipas, Mexico, and Hidalgo, Hidalgo County, Texas, the said automobile was "detained for investigation" by the United States Inspector of Customs, L. B. Canion, then on duty at said bridge. This automobile was detained at about 11 p. m. on October 26, 1942.

Canion testified that he detained the automobile in question because he found said car with a coat of dust all over it. He stated: "It gave me the impression that it had been stored. * * * It appeared to me that the license plates had just been put on it. The screws that hold the license plates were shiny and bright and above the screws the dust had been removed in a crescent shape, like someone's thumb had removed the dust. The car was very clean inside." (See transcript of testimony, page 7.)

At the time of the detention the driver of the automobile was Christin Herrera Bravo. The car had no title papers, nor did it have a permit or license to be exported into Mexico. The driver Bravo, a mechanic, was dressed like a mechanic. Bravo testified that he was sent over from Reynosa to get the car; was told where he would find it, and that he found it exactly where he was supposed to find it; that it would have, and it did have, Mexican license plates on it. On the question of the presence of the car keys, Bravo made conflicting statements.

General Hernandez testified by deposition (see transcript, page 184), that he did send Isaac to the United States to purchase the automobile in question; that he did send a chauffeur to see if the car was in good condition before accepting it, but that he did not authorize the chauffeur to bring the car into the Republic of Mexico in violation of any law.

The record in the case shows:

1. The application for warrant for further detention was filed on November 10, 1942 (more than 10 days after October 26, 1942), in which it is stated that the Cadillac coupe in question was seized on November 3, 1942.

2. The warrant for further detention was signed by the Judge on November 10, 1942.

3. The petition of L. Hernandez for the restoration of the property was filed on January 9, 1943, in which he stated the automobile in question was purchased by his agent in Detroit, Michigan, about October 19, 1942, and was transported to McAllen, Texas, and there placed in storage.

4. The summons, dated January 14, 1943.

5. On August 4, 1943, there was a dismissal, without prejudice to the claim of L. Hernandez.

6. On December 7, 1943, the answer of L. Hernandez to the libel was filed. In this answer Hernandez admits he sent a mechanic to inspect the motor of the said automobile, but says that he did not authorize said mechanic to bring the car into Mexico.

In view of the foregoing, the question to be determined is whether or not said Cadillac coupe is properly subject to forfeiture.

Section 401, Title 22, U.S.C.A., provides that whenever an attempt "is made to export" from the United States any article in violation of law, or whenever there shall be cause to believe that any such articles "are being or are intended to be exported" in violation of law, "the several collectors, comptrollers of customs, surveyors, inspectors of customs, and marshals, and deputy marshals of the United States, and every other person duly authorized for the purpose by the President," may seize and detain any articles "about to be exported" in violation of law and retain possession thereof until released or disposed of as directed in the succeeding sections of the Act. If, upon inquiry as provided in such sections, the property seized shall appear "to have been about to be so unlawfully exported," the same shall be forfeited to the United States. Under Section 402 of the Statute, it is made the duty of the person making the seizure to apply with due diligence to the Judge of the District Court which has jurisdiction over the place of

seizure for a warrant to justify the detention of the property. The judge may grant the warrant only on oath or affidavit that there is known or probable cause to believe "that the property seized is being or is intended to be exported" in violation of the law. If the person making the seizure fails to make application for the warrant "within a reasonable time, not exceeding ten days after the seizure," or if the judge refuses to issue the warrant, the property shall forthwith be restored to the owner or person from whom seized.

█ With reference to the car in question, there is no doubt that the Inspector of Customs who detained the car on the night of October 26, 1942, was a person duly authorized so to do. The only question then remaining is whether or not the detention was in effect a seizure. In my opinion it was. Bearing in mind the suspicious circumstances that were clearly apparent to the Inspector of Customs at the time of the detention, he had "probable cause" to make same, and it is inconceivable that the car, after once being detained, would have been released. Therefore, the effective date of the seizure was on the night of October 26, 1942. See Dale v. Hartson, Collector of Customs, D.C., 289 F. 493, at page 495, where it is said:

"To constitute a valid seizure there must be an open, visible, possession claimed and authority exercised by the seizing officer; the parties must understand that they are dispossessed, and that they are no longer at liberty to exercise any control over the property. * * *

" 'Open' means visible, exclusive, exposed to view, free from concealment, not constructive and imaginary, not merely nominal. 6 Words and Phrases, 4983."

Inasmuch as the provisions of the statute with reference to the filing of an application for warrant were not complied with "within a reasonable time, not exceeding ten days after the seizure", as a consequence the car in question should be restored to the person from whom it was taken, and it is so ordered.

(b) and (c). On November 30, 1942, an application for warrant for further detention of property was signed by A. R. Kahn, Assistant Collector of Customs at Laredo, Texas. In such application it was stated:

"On October 29, 1942, there were found in the Martin and Martin Garage, McAllen, Texas, two Cadillac automobiles, described as follows, which had been stored in this garage by Antoine Isaac, a resident of Mexico, D. F. Mexico:

"1 five-passenger Cadillac coupe, motor No. 5357656,

"1 five-passenger Cadillac coupe, motor No. 5350552.

"And on October 30, there was found in the Carpenter Chevrolet Company garage, McAllen, Texas, the following described automobile, which had been left at this garage for repairs by Antoine Isaac on October 26, 1942:

"1 five-passenger Cadillac coupe, motor No. 5346662.

"On November 7, 1942, there was found stored in the Roma Service Station, Roma, Texas, a 1940 Ford Panel-body truck, described as follows, which had been placed there by Antoine Isaac, of Mexico City, on October 27, 1942, for storage: 1 1940 Panel-body Ford truck, motor No. 18-5896258."

█ Thereafter were set forth facts showing probable cause for the seizure of the above described automobiles. "Probable cause" simply means "good reason."

On December 8, 1942, a warrant for the further detention of the above described property was duly signed and filed. On September 17, 1943, a libel was filed upon the above described automobiles, and on October 28, 1943, a monition was issued. Thereafter, on November 26, 1943, an answer to the libel above mentioned was filed by Salin A. Noemi, A. Ojeda Caballero, Enrique Rivera Artega and D. Valles Jordan, all citizens and residents of the Republic of Mexico, in which answer, in paragraph 18, they state:

"Each of these claimants further urges in his behalf the failure of the seizing officers to comply with Section 402, Title 22, U.S.C.A. in this, that after seizure of his automobile said seizing officers permitted more than ten days to elapse before applying to the court for a warrant of detention as provided by law. That such failure on the part of the seizing officers constitute a lack of due diligence contrary to the form of the statute of the United States of America above referred to."

█ The testimony in the case was duly submitted, and the case is now before the court for decision. A question to be solved in order to decide the case is, "Was the detention of the automobiles in question in le-

gal effect a seizure?" In order to determine this question it is necessary to first determine whether such detention was by an officer authorized to make such a seizure. The parol evidence introduced on the trial of this case discloses that Customs Agent Aaron Quick, having "found the automobiles in Martin and Martin Garage, McAllen, Texas, Carpenter Chevrolet Company garage, McAllen, Texas, and Roma Service Station, Roma, Texas," placed some character of stay or hold order upon same by requesting the operators of the respective garages to hold the cars until further orders. It is contended by the Government that a Customs Agent does not have the necessary authority to make a legal seizure. However, in view of the definition of seizure, hereinabove defined, such is not the case. In the case of United States v. Story, 294 F. 517, 519, from the Fifth Circuit, it is held:

"The regularity of the seizure is not a necessary condition to a condemnation of the things seized, providing there is sufficient ground for an adjudication of a forfeiture. Property may be seized by a private person, acting at his peril, and, if a cause of forfeiture is shown to exist against it, condemnation will follow, notwithstanding the seizure was by an unauthorized person. The Caledonian, 4 Wheat. 101, 4 L.Ed. 523; Wood v. United States, 16 Pet. 342, 10 L.Ed. 987; Taylor v. United States 3 How. 197, 11 L.Ed. 559."

Then, too, having adopted the seizure as made by the said Customs Agent, who, by the way, prepared the application for warrant for further detention of all the automobiles involved in this consolidated suit, such adoption would give it a retroactive effect. See Dodge v. United States, 272 U.S. 530, page 572, 47 S.Ct. 191, 71 L.Ed. 392, opinion by Justice Holmes.

The seizure having been made by one authorized to make same, and the application for warrant for further detention not having been made within ten days from such date of such seizure, the sole remaining question to determine is whether or not such ten-day provision is mandatory and jurisdictional. In my opinion, it clearly is. See Section 402, Title 22, U.S.C.A. supra. In this connection the following cases are cited: United States v. 267 Twenty-Dollar Gold Pieces, D.C., 255 F. 217; United States v. 21 lbs. 8 ozs. more or less, of Platinum, D. C., 53 F.Supp. 971; Id., 4 Cir., 147 F.2d 78; and United States v.

One Packard Automobile, D.C., 60 F.Supp. 993.

I further find that there was probable cause for the detention of each of the automobiles mentioned in this opinion, but, for the reasons above set out, said automobiles should be restored to the persons from whom seized.