## UNITED STATES v. 200 WATCHES.

### SAME v. 27 WATCHES, etc.

District Court, S. D. New York.

April 25, 1946.

John F. X. McGohey, U. S. Atty., of New York City (Thomas McCall, Asst. U. S. Atty., of New York City, of counsel), for the Government.

Dow & Symmers, of New York City (Wilbur E. Dow, Jr., of New York City, of counsel), for petitioners.

KENNEDY, District Judge.

Petitioners' property has been seized by the customs authorities and they now ask that it be restored to them. 22 U.S.C.A. § 403. The ground of the seizure was that petitioners were guilty of an attempt to export the articles seized in violation of law. 22 U.S.C.A. § 401.

Both proceedings were tried together, and the facts which I now set forth are derived from statements of counsel at the trial, and from such allegations of the petitions as are undisputed.

On October 20, 1945, S. S. Salem Maritime sailed from Los Angeles, California, bound for Yokohama, Japan. Before she sailed, her master, petitioner Robertson, purchased 200 watches which he took on board with him. Her purser, petitioner Ressler, at the same time purchased and took on board 27 watches, 24 cigar lighters, and 22 fountain pens. It is clear beyond dispute that these officers intended to sell these articles to Navy personnel stationed in the Pacific. No attempt was made by either petitioner to secure a "General United States License" permitting shipment to members of the armed forces (F.R. April 25, 1945, p. 4469), nor did either petitioner make a declaration that the articles were intended to be exported (F.R. April 25, 1945, p. 4467). In other words, it was the intention of the petitioners to take these articles out of the country for sale, and if their action constituted "exporting" there is no doubt that on October 20, 1945 they were attempting to violate the statute which the government has invoked. 22 U.S.C.A. § 401.

However, when Salem Maritime arrived at her first port of call (Honolulu) her orders were changed, and she was rerouted back to continental United States. She reached Galveston, Texas, on or about November 17, 1945, whereupon both petitioners declared the articles which are the subject of these proceedings. The customs authorities then directed that the property remain on the ship under seal. The ship proceeded to the Port of New York, and on December 4, 1945, the customs authorities here seized the property. Six days later, namely on December 10, 1945, warrants ordering the further detention of the property were issued out of this Court. 22 U.S.C.A. § 402. These petitions were then filed demanding restoration of the seized property (22 U.S.C.A. § 403) on three grounds: (1) That no "proper warrant" was issued or applied for within ten days after the seizure, (2) that the warrant actually issued does not conform to the statute, and (3) that the warrant issued does not "state the true facts of the case," by which petitioners mean that the seizure was not justified under the statute.

I admit that on its face the petition seems to be merely an attack upon the form of the warrant. But this is only a surface phase of the real question that emerges: Does the statute (22 U.S.C.A. § 401) authorize a seizure under circumstances where the owner of the property formed the intention of transporting it from continental United States in a vessel flying the flag of the United States for sale on board American men of war in the Pacific, and where this intention was frustrated, and the property returned to this continent?

The act authorizes seizure by the customs authorities (22 U.S.C.A. § 401): "Whenever an attempt is made to export or ship from or take out of the United States any arms or munitions of war, or other articles, in violation of law, or whenever there shall be known or probable cause to believe that any such arms or munitions of war, or other articles, are being or are intended to be exported, or shipped from, or taken out of the United States, in violation of law, * * *." The customs authorities may seize "any articles or munitions of war about to be exported or shipped from, or taken out of the United States, in violation of law * * *." It will be observed that so far as the intention of the exporter or the status of the goods is concerned, the statute employs only verbs in the present tense. To be subject to seizure, it is necessary that the articles be "about to be exported." The probable cause spoken of on the part of the customs authorities concerns itself with articles which "are being or are intended to be exported." The attempt to export which offends the statute is one which "is made."

■ Two arguments are really urged in support of the petitions to restore. It is said that this was not a case of "exporting" and reliance is placed by the petitioners on cases like United States v. Hill, 2 Cir., 1929, 34 F.2d 133, where, on the basis of holdings like that in Swan & Finch Co. v. United States, 1903, 190 U.S. 143, 23 S.Ct. 702, 47 L.Ed. 984, and National Lead Co. v. United States, 1920, 252 U.S. 140, 40 S.Ct. 237, 64 L.Ed. 496, Judge A. N. Hand reaches the conclusion that "exportation" means a "severance of goods from the mass of things belonging to this country, with an intention of uniting them to the mass of things belonging to some foreign country." If the statutory language here must be strictly construed I suppose that the words "shipped from" and "took out" are all colored by the word "export," and some difficulty might be found in determining that these petitioners were actually severing the seized articles from the mass of things belonging to this country, and uniting them to the mass of things belonging to a foreign country. However, having in mind the purposes of the statute and the circumstances under which it was enacted, I believe that it should be fairly and reasonably construed to bring within its scope what the petitioners did here, even though a narrow interpretation of the word "export" might be justified under other circumstances. United States v. 21 Pounds, 8 Ounces, of Platinum, 4 Cir., 1945, 147 F.2d 78, 83. If I am right in this, then it was the intention of the petitioners to violate the law on October 20, 1945 when their ship cleared the Port of Los Angeles, and their property was then subject to seizure under the act.

■ Was the property subject to seizure when it arrived at the port of New York, and when it was in fact seized on December 4, 1945? The sealing of the goods at Galveston on November 17, 1945, I do not consider a seizure in any real sense of the word. If it was, then the warrants in the case at bar were invalid because of the statutory requirement that a warrant must be applied for within 10 days after seizure (22 U.S.C.A. § 402), a requirement which has been strictly applied. United States v. One Packard Automobile, D.C.W.D.Tex., 1945, 60 F.Supp. 993; United States v. One Cadillac Coupe, D.C.S.D.Tex., 1945, 62 F. Supp. 631. But I think merely impounding the property is not the same as seizing it. In fact it has been held that where property which played a part in the commission of a crime was seized at the time of the arrests by F.B.I. agents that the customs authorities were not too late even after a delay of 10 months in the application for the warrant: it was held that the 10-day period does not commence to run until a seizure has been made by the very people specifically authorized to make it under the terms of the statute. United States v. 21 Pounds, 8 Ounces, of Platinum, supra.

■ The difficult question here is whether Congress intended to authorize seizure only when the illegal exporter was caught in the act, or whether, on the other hand, an attempt at illegal export once having been made, the goods become tainted, and may be validly seized wherever or whenever they come within reach of the customs authorities. It has been said that a statutory power to divest an owner of his property is to be strictly construed. United States v. 267 Twenty-Dollar Gold Pieces, D.C.W.D.Wash.,N.D., 1919, 255 F. 217, cited in United States v. 21 Pounds, 8 Ounces More or Less of Platinum, D.C.D. Md., 1944, 53 F.Supp. 971, 976. Reviewing a decree which was based in part at least upon this position, the Circuit Court of Appeals said that this particular statute, designed as it is to prevent frauds upon the revenue, is *not* to be construed strictly in favor of the defendant, but fairly and reasonably, and in such manner as to carry out the intention of the legislature. United States v. 21 Pounds, 8 Ounces, of Platinum, supra. My own conclusion, rather diffidently advanced, is that strict construction is appropriate only where matters of procedure are concerned, and that courts are not to frustrate the intention of Congress by too narrow an interpretation of the definition of the prohibited acts.

Even granting all that, however, I cannot bring myself to believe that the statute authorizes the seizures from which the proceedings at bar arose. I have made mention of the fact that action by the customs

authorities is warranted only when the offending goods *"are* being or are intended to be exported," or *"about to be exported* or shipped from, or taken out of the United States." The attempt which is denounced is one which *"is* made to export or ship from or take out of the United States" the property seized. It is clear beyond question, as I have said, that on October 20, 1945, these goods were subject to seizure at Los Angeles. But it is equally clear to me that on November 17, 1945, at the Port of Galveston, and on December 4, 1945, at the Port of New York there was no present attempt to export, and the goods were not "about to be exported." (See Webster's New International Dictionary, Second Unabridged Edition, page 7, where "about to" is defined as "on the point or verge of ", or "in the act of.") The illicit design had been frustrated, a fact which the petitioners voluntarily acknowledged when they declared the seized property on their return to continental United States. At that time, the attempt had terminated, and petitioners had become reconciled to the fact that they could not export these articles. From that point on, even under the most liberal construction of the statute, the goods were not the subject of seizure because they were not "about to be exported."

I am not at all satisfied with the justice of my own decision. I am fully conscious of the fact that these ship's officers, holding responsible positions, attempted to set in motion transactions that would create black markets and bring in their train a number of undesirable results. But I cannot believe that Congress intended by this statute to authorize the customs authorities to seize property unless its owner had been caught in the act of taking it out. To hold that the property itself becomes tainted, and retains that taint even after the illicit design of the owners has become impossible, and has been abandoned, would be to produce absurd results. Logically it would make subject to seizure any goods in warehouses in American ports, if only the owner of those goods once conceives the notion of exporting them illegally, and takes the slightest step in the consummation of his plan.

I think I know all of the objections that can be urged against the construction of the statute which I have adopted. Principally, it means that the petitioners go scot free, when they richly deserve to be punished. I am sorry that the statute is not broad enough to cover the situation disclosed here, but I can only take it as I find it.

The prayers of the petitions are granted; settle orders on notice. If orders like these are appealable, and the government is advised to seek a review, I will stay them pending appeal.