## THE CACHALOT III.

No. 913–M Misc.

District Court, S. D. Florida, Miami Division.

May 4, 1945.

528

Herbert S. Phillips, U. S. Atty., of Tampa, Fla., and Ernest L. Duhaime, Asst. U. S. Atty., of Miami, Fla., for the Government.

Joe Brown Booth and Vincent C. Giblin, both of Miami, Fla., for claimant and owner.

HOLLAND, District Judge.

This cause was instituted by a petition for a warrant of detention subscribed by the Local Inspector of Customs on March 9, 1945, wherein he recites that on March 1, 1945, he seized a certain motor vessel, to-wit, The Cachalot III, bearing official British registry No. 152571; that cause to file such petition for the warrant was that he found the vessel moored at the west side of the McArthur Causeway in the City of Miami, laden with 31,631 board feet of pine lumber and 15 kegs of galvanized nails; that no export license for the exportation of said merchandise was presented, which was required under the provisions of the Act of July 2, 1940, Section 6, 54 Stat. 714, 50 U.S.C.A. Appendix, § 701; and that he had cause to believe that said merchandise was being, or was intended to be, exported, shipped from, or taken out of the United States in violation of law; and that he therefore seized the vessel under the authority of 22 U.S.C.A. § 401, and that he had delivered the same into the custody of the Collector of Customs, Tampa, Florida, for disposition according to the provisions of 22 U.S.C.A. §§ 401 to 408, inclusive.

An order was entered in this Court, dated March 9, 1945, commanding the Collector of Customs to detain the vessel in custody in order that the same might be dealt with in accordance with law.

Subsequently, on March 21, 1945, Sylvain Ledee, owner of the vessel, filed a petition asking that an opportunity to secure an export license for the export of said lumber and other materials be allowed, and for the ultimate restoration of the vessel and the seized cargo. The said petition of said owner admitted that the vessel was laden with 21,000 board feet of lumber and 15 kegs of galvanized nails, but denied he, the owner, had sought to export the lumber in violation of the laws of the United States.

A commissioner was appointed to take the testimony and make his recommendations and findings of fact and conclusions of law. The commissioner filed his report on May 2, 1945, and the Court has granted immediate hearing on exceptions of the Government to the report of the commissioner. The commissioner found that the Government had failed to sustain its burden of proof that at the time of the detention of the vessel the owner intended to export lumber from the United States in violation of law. The report discloses that the lumber loaded on the vessel at the time of the seizure was included within the materials prohibited from exportation under Presidential Order authorized under 50 U.S.C.A. Appendix, § 701. Such materials could not be exported except in accordance with a license as provided for in prescribed regulations. No license had been obtained by the owner of the vessel at the time the lumber was loaded on the vessel. 22 U.S.C.A. § 401 provided ample basis for the issuance of the warrant of detention under Section 402. The owner of the vessel has filed his petition for restoration under Section 403, and the inquiry to be made and the results of which are to be determinative of the outcome of the proceedings based on said petition of the owner are not, as determined by the commissioner, whether the owner intended to export the lumber from the United States in violation of law, but rather are to be inquired into as to whether the property seized shall appear to have been about to be so unlawfully exported, shipped from, or taken out of the United States. The evidence taken before the commissioner affirmatively supports a finding that the property seized did appear to be about to be so unlawfully exported.

The commissioner recommended that the Cachalot III be returned to the owner. No recommendation is made by the commissioner with reference to the forfeiture to the United States of the lumber and other materials. I agree with the recommendation of the commissioner that the vessel should be returned to the owner, but because of far different reasons than those which formed the recommendation of the commissioner. While I agree that the vessel should be returned to the owner, I find from the evidence that the lumber and materials should be forfeited to the United States.

The distinction between the lumber and the vessel itself as is here determined follows from a consideration of the language of said Section 401. The several Collectors and other Government officials enumerated in said Section are authorized to seize and detain (1) any articles or munitions of War about to be exported or shipped from or taken out of the United States, in violation of law, and (2) the vessels or vehicles containing the same. The matter of forfeiture is dealt with in the last sentence of Section 401, and it is quite apparent that "property" as there used includes only "any arms or munitions of war, or other articles." It does not include the vessels or vehicles containing the same. The statute very clearly limits the word "property" to property which shall appear to have been about to be so unlawfully exported, shipped from or taken out of the United States. I realize that the District Court in Texas, in United States v. 251 Ladies Dresses, D.C., 53 F.Supp. 772, authorized the forfeiture of the truck in which the merchandise was being transported as well as the merchandise itself, but I am of the opinion that the construction that I have here given to the statute with reference to the forfeiture of the vessel is the right conclusion.

The commissioner refers to United States v. Fernandez, 1918, 5 Cir., 254 F. 302, where certain gold coin was adjudged to be forfeited, it having been alleged to have been delivered for export and shipment, and for the purpose of being taken out of the United States in violation of Title VII of the Act of June 15, 1917, Chap. 30, 40 Stat. 225, and of the President's proclamation of September 7, 1917, 40 Stat. 1694. The claimant as a condition of redelivery to him was authorized to execute a bond conditioned that the gold coin would not be exported or employed contrary to law. Title VII of the said Act of June 15, 1917, dealt with exports during World War I. Title VII does not appear in United States Code, but I take it that Title VII has expired by its own self-termination date. I do not have the United States Statutes at Large in my library further back than those of the 70th Congress, 1927-1929. The Circuit Court of Appeals held that the said Title VII, the only law under which a forfeiture could be had in the said Fernandez case, did not provide for the giving of a bond and the release of the property, and being of the opinion that the forfeiture would not have been adjudged except as the predicate for a bond, remanded the case for further consideration of the questions of law and fact involved in the alleged forfeiture. I do not think that the Fernandez case is helpful in construing the provisions of Title VI of said Act, but I am very clear that there is nothing in the Fernandez decision holding contrary to the conclusion that I have reached herein. It is further to be observed that the Fernandez case was dealing with gold coin and did not involve in any manner a vessel or the means of carriage involved in the alleged exportation out of the United States of the said gold coin.

The matter of the commissioner's fee will be considered in the final order.

Let proper order consistent herewith be submitted.