## UNITED STATES v. MORACHIS.

### No. 11007.

Circuit Court of Appeals, Ninth Circuit.

April 5, 1946.

Frank E. Flynn, U. S. Atty., of Phoenix, Ariz., John P. Dougherty, Asst. U. S. Atty., of Tucson, Ariz., and Allen B. Lutz and Leavenworth Colby, Attys., Dept. of Justice, both of Washington, D. C., for appellant.

Ruffo Espinosa, of Nogales, Ariz., for appellee.

Before GARRECHT, DENMAN and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

The United States appeals from a judgment of the District Court of the United States for the District of Arizona, decreeing restoration of a Plymouth truck to the owner, Miguel Morachis in a proceeding wherein appellant claimed forfeiture of the truck to it under Title VI of the Espionage Act of 1917, 22 U.S.C.A. §§ 401–408.[1]

Miguel Morachis, claimant-appellee, maintained an office in Nogales, Arizona, at the time of the seizure. His business was

[1] Title VI, Espionage Act of 1917 (Seizure of Arms and Other Articles Intended for Export), act of June 15, 1917, c. 30, 40 Stat. 223–225, as amended by the act of March 1, 1929, c. 420, 45 Stat. 1423.

that of buying and selling produce and shipping the same from the United States into Mexico. Rodolpho Tapia (sometimes called Rodolpho Tapia Montano), an employee of Marachis and in charge of his business, used the vehicle in question for attempting to take into Mexico lemons, grapefruit and canned milk in violation of the Export Control Law of 1940, 50 U.S.C.A.Appendix § 701.[2]

The Export Control Law makes no provision for seizure of property sought to be illegally exported, but the government relies upon the forfeiture provisions in the Espionage Act as authority for the forfeiture of the truck. United States v. 21 Lbs. 8 Oz. More or Less of Platinum, D.C.Md.1944, 53 F.Supp. 971.

The seizure occurred June 3, 1944, and within ten days thereafter a warrant for further detention of the property seized was issued by the court. On June 10th a libel of forfeiture was filed by the United States against both the food and truck. No petition for restoration of the food was filed by a claimant or owner, and it was forfeited to the government. Timely petition for restoration of the vehicle was filed by Morachis, and the court held that the Espionage Act does not authorize forfeiture of the vehicle, and accordingly ordered it restored to the owner. Execution of the order was stayed pending the result of this appeal.

The case was submitted to the trial court upon an agreed statement of facts.

The question here is: Did the court err in holding that Title VI of the Espionage Act of 1917 does not authorize forfeiture of a vessel or vehicle.

By the weight of authority the trial court erred. The point was inherent but not directly raised in the following cases: United States v. 251 Ladies Dresses, D.C.Tex.1943, 53 F.Supp. 772; United States v. One Ford Coupe Automobile, D.C.Tex. 1944, 54 F.Supp. 852, 853; United States v. One Chevrolet Truck, D.C.Tex.1945, 62 F.Supp. 670. An early case arising shortly after the enactment of the Espionage Act, involving a libel of forfeiture was filed against the automobile carrying the illegal export, is United States v. Two Hundred and Sixty-Seven Twenty Dollar Gold Pieces, D.C.Wash.1919, 255 F. 217, 218. The only allegation therein asserted against the automobile in support of its forfeiture was that by the use of it claimant did wilfully and feloniously attempt to export gold pieces. The court in The Cachalot III, D.C.Fla.1945, 60 F.Supp. 527, took an opposite view.

2 Export Control Law of 1940, § 6 of War Powers Act of July 2, 1940, c. 508, 54 Stat. 714, as amended by act of June 30, 1942, c. 461, 56 Stat. 463, as further amended by act of July 1, 1944, c. 360, 58 Stat. 671: "§ 6(a) The President is hereby authorized to prohibit or curtail the exportation of any articles, technical data, materials, or supplies, except under such rules and regulations as he shall prescribe.

"(b) Unless the President shall otherwise direct, the functions and duties of the President under this section shall be performed by the Foreign Economic Administration.

"(c) In case of the violation of any provision of any proclamation, rule, or regulation issued hereunder, such violator or violators, upon conviction, shall be punished by a fine of not more than $10,000, or by imprisonment for not more than two years, or by both such fine and imprisonment.

"(d) The authority granted by this section shall terminate on June 30, 1945, or upon any prior date which the Congress by concurrent resolution, or the President, may designate; except that as to offenses committed, or rights or liabilities incurred prior to such date, the provisions of this section and such rules, regulations and proclamations shall be treated as remaining in effect for the purpose of sustaining any suit, action, or prosecution with respect to such right, liability, or offense."

Revised Export Control Regulations of the Board of Economic Warfare, 8 FR 1494, as amended by Amendment 143 (Foreign Economic Administration), effective on January 29, 1944, 9 FR 833, 834:

§ 801.2 Prohibited Exportations.—The exportation from the United States of all the commodities hereafter enumerated in this section and all technical data as defined in § 806.1 of this subchapter to all destinations except Canada (including that part of Labrador under Canadian authority) is hereby prohibited unless and until a license authorizing such exportation shall have been issued by the Office of Exports: (Fruits—canned, dried, and fresh are included pp. 1513, 1514; milk and cream, condensed, evaporated, dried and fresh are specifically included under "Dairy products" p. 1509; "General License Group—None" for all these commodities is provided in Amendment 143, 9 FR 833, 834.

Section 1 of the Act, in part, is as follows: "Whenever an attempt is made to export or ship from or take out of the United States any arms or munitions of war, or other articles, in violation of law, or whenever there shall be known or probable cause to believe that *any such arms or munitions of war, or other articles,* are being or are intended to be exported, or shipped from, or taken out of the United States, in violation of law, the several * ·* * marshals * * * may seize and detain any articles or munitions of war about to be exported or shipped from, or taken out of the United States, in violation of law, and the *vessels or vehicles* containing the same, and retain possession thereof until released or disposed of as hereinafter directed. If upon due inquiry as hereinafter provided, the *property seized* shall appear to have been about to be so unlawfully exported, shipped from, or taken out of the United States, the same shall be forfeited to the United States. [Emphasis added.]"

The question arises whether the phrase "property seized," as used in the last sentence of the section, refers only to "arms or munitions of war, or other articles," or whether it is inclusive of the "vessels or vehicles" seized.

▇ It is quite clear that the primary purpose of the law is to provide for the seizure and the forfeiture of the "load." Secondarily, and for practical purposes, the seizure of the "vessels or vehicles" used is authorized. It remains to be determined whether or not the "property seized" inclusive of the "vessels or vehicles" may be forfeited as a deterrent from the act of smuggling.

Before we go further with the consideration of the meaning of the Act, we interject comment and citation of authority relating in general to remedial statutes.

It is said in United States v. 21 Pounds, 8 Ounces, of Platinum, 4 Cir., 1945, 147 F. 2d 78, 83, 84: "* * * 'Statutes to prevent frauds upon the revenue are considered as enacted for the public good, and to suppress a public wrong, and therefore, although they impose penalties or forfeitures, not to be construed, like penal laws generally, strictly in favor of the defendant; but they are to be fairly and reasonably construed, so as to carry out the intention of the legislature.' United States v. Stowell, 133 U.S. 1, 12, 10 S.Ct. 244, 245, 33 L. Ed. 555. See also, Johnson v. Southern Pacific Co., 196 U.S. 1, 17, 25 S.Ct. 158, 49 L.Ed. 363; United States v. A. Graf Distilling Co., 208 U.S. 198, 199, 205, 206, 28 S. Ct. 264, 52 L.Ed. 452; United States v. Ryan, 284 U.S. 167, 172, 52 S.Ct. 65, 76 L.Ed. 224. For like reasons, the Espionage Act of June 15, 1917, which was enacted for equally important public purposes, should be construed in a fair and reasonable manner."

The answer to whether or not the vehicle may be forfeited must be drawn from a consideration of the whole Act. Section 2, in part, is as follows: "It shall be the duty of the person making any seizure under this title to apply, with due diligence, to the judge of the district court of the United States * * * having jurisdiction over the place within which the seizure is made, for a warrant to justify the further detention of the property so seized, which warrant shall be granted only on oath or affirmation showing that there is known or probable cause to believe that the property seized *is being or is intended to be exported or shipped from or taken out of the United States in violation of law;* and if the judge refuses to issue the warrant, or application therefor is not made by the person making the seizure within a reasonable time, not exceeding ten days after the seizure, the property shall forthwith be restored to the owner or person from whom seized. If the judge is satisfied that the seizure was justified under the provisions of this title, and issues his warrant accordingly, then the property shall be detained by the person seizing it until the President, who is hereby expressly authorized so to do, orders it to be restored to the owner or claimant, or until it is discharged in due course of law on petition of the claimant, or on trial of condemnation proceedings, as hereinafter provided [emphasis added]."

Other parts of the Act relevant to the case are set out in the margin.[3]

---

[3] "Section 3. The owner or claimant of any property seized under this title may, at any time before condemnation proceedings have been instituted, as hereinafter provided, file his petition for its restoration in the district court of the United States * * * having jurisdiction over the place in which the seizure was made, whereupon the court shall advance the cause for hearing and determination with all possible dispatch, and, after causing notice to be given

If, as in this case, the vehicle is seized, it must be held and disposed of in accordance with law. The law covering the procedure to be followed after seizure is contained in Section 2 of the Act, hereinabove quoted, with the right of the owner to petition for its restitution provided by Section 3 of the Act. Briefly, according to Section 2, the seizure must be reported to a district judge, and a warrant for detention must issue if by oath or affirmation it is shown that "the property seized is being or is intended to be exported or shipped from or taken out of the United States in violation of law." Restoration follows if this course is not taken within ten days from seizure; otherwise, "the property" shall be detained unless released by the President or until discharged under petition of claimant or condemned by court trial.

There is not in either Section 1 or Section 2 any clear cut language distinguishing between the vehicle and the load. The disposal of the "property seized," which includes the vehicle under Section 1, is to be disposed of by the procedure prescribed in Section 2. It cannot be that authorization for the seizure of load and vehicle has been provided and that procedure for disposal of the load only by court order has been provided.

We take it that the oath or affirmation, which must be made by the seizing officer "that the property seized is being or is intended to be exported or shipped from or taken out of the United States in violation of law," includes the load as being or intended to be exported and includes the vehicle as "being * * * taken out of the United States in violation of law." Of course, any vessel or vehicle being used to convey contraband out of the United States is literally "being * * * taken out of the United States in violation of law." We think the only consistent interpretation of the Act is that the proceedings, which are outlined for the

to the United States attorney for the district and to the person making the seizure, shall proceed to hear and decide whether the property seized shall be restored to the petitioner or forfeited to the United States.

"Section 4. Whenever the person making any seizure under this title applies for and obtains a warrant for the detention of the property, and (a) upon the hearing and determination of the petition of the owner or claimant restoration is denied, or (b) the owner or claimant fails to file a petition for restoration within thirty days after the seizure, the United States attorney for the district wherein it was seized, upon direction of the Attorney General, shall institute libel proceedings in the United States district court * * * having jurisdiction over the place wherein the seizure was made against the property for condemnation; and if, after trial and hearing of the issues involved, the property is condemned, it shall be disposed of by sale, and the proceeds thereof, less the legal costs and charges, paid into the Treasury: Provided, That the court shall order any arms and munitions of war so condemned delivered to the War Department of the United States.

"Section 5. The proceedings in such summary trials upon the petition of the owner or claimant of the property seized, as well as in the libel cases herein provided for, shall conform, as near as may be, to the proceedings in admiralty, except that either party may demand trial by jury of any issue of fact joined in such libel cases, and all such proceedings shall be at the suit of and in the name of the United States: Provided, That upon the payment of the costs and legal expenses of both, the summary trials and the libel proceedings herein provided for, and the execution and delivery of a good and sufficient bond in an amount double the value of the property seized, conditioned that it will not be exported or used or employed contrary to the provisions of this title, the court, in its discretion, may direct that it be delivered to the owners thereof or to the claimants thereof.

"Section 6. Except in those cases in which the exportation of arms and munitions of war or other articles is forbidden by proclamation or otherwise by the President, as provided in section one of this title, nothing herein contained shall be construed to extend to, or interfere with any trade in such commodities, conducted with any foreign port or place wheresoever, or with any other trade which might have been lawfully carried on before the passage of this title, under the law of nations, or under the treaties or conventions entered into by the United States, or under the laws thereof.

"Section 7. Upon payment of the costs and legal expenses incurred in any such summary trial for possession or libel proceedings, the President is hereby authorized, in his discretion, to order the release and restoration to the owner or claimant, as the case may be, of any property seized or condemned under the provisions of this title."

disposal of "the property seized," cover all of the property seized. If this is so, then it follows of necessity that the vehicle is subject to forfeiture along with the load.

The judgment is reversed insofar as it decrees that possession of the Plymouth truck be restored to Miguel Morachis, and the case is remanded to the trial court with instructions to proceed with the case in conformity with the law as construed by this opinion.

Reversed and remanded.

DENMAN, Circuit Judge (concurring).

The question here is whether a vehicle containing articles denied "taking out of the United States" without license, and which are being carried in it without such license, is subject to forfeiture to the United States. It is admitted that the mere taking out of the vehicle alone is not unlawful.

The pertinent words of the statute concerning the "taking out" of the seized vehicle are "Whenever an attempt is made to * * * take out of the United States any * * * articles, in violation of law" the authorized persons "may seize and detain any articles * * * about to be * * * taken out of the United States, in violation of law, and the vessels or vehicles containing the same * * *." If "the *property seized* shall appear to have been about to be so *unlawfully* * * * *taken out* of the United States, the same shall be forfeited to the United States." 22 U.S.C.A. § 401.

It is contended that though the seizure of the automobile is allowed, its "[taking] out of the United States" with its unlawful load is not an "unlawful" act and hence it is not subject to forfeiture. I cannot agree. The seizure and detention of the vehicle would be meaningless if the appellees' contention prevail. The unlawful enterprise includes taking the vehicle as well as the fruit and milk out of the United States.

This view is confirmed by Section 5 of the same Act, 22 U.S.C.A. § 405, providing for the conditions of the bond on release of the "property seized" which includes the automobile. The pertinent portion of the condition is that "it will not be exported or used or employed contrary to the provisions of this title." The word "exported" refers to the fruit and milk in the automobile and covers all the pro-

tection the government needs regarding the contents of the automobile. The words "used or employed" clearly refer to the automobile's participancy in such a wrongful enterprise as exporting interdicted articles.