UNITED STATES of America,
Plaintiff/Appellee,

v.

ONE 1980 MERCEDES BENZ 500 SE,
Arizona Lic. No. AKL–249, Vin: WB
1260 3612 001476, its tools and appurte-
nances, Defendant/Appellant.

Dierk Hagemann, Claimant/Appellant.

No. 84–5623.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 3, 1984.

Decided Sept. 30, 1985.

MacBride, District Judge, sitting by
designation, filed opinion concurring in part
and dissenting in part.

Eric Nobles, Los Angeles, Cal., for plaintiff-appellee.

Carl Greifzu, Pasadena, Cal., for defendant-appellant.

Before WALLACE and BOOCHEVER, Circuit Judges, and MacBRIDE,* District Judge.

BOOCHEVER, Circuit Judge:

This appeal involves the forfeiture of a Mercedes Benz automobile that was used to transport unlicensed electronic testing equipment to Los Angeles International Airport where the equipment was checked as luggage to Zurich, Switzerland. The equipment was required to be licensed if exported to any country but Canada. The car's owner, Dierk Hagemann, contests the forfeiture on the grounds that his vehicle was not used in exporting or attempting to export the unlicensed equipment and that the delay in instituting forfeiture proceedings was unreasonable. The district court granted summary judgment for the government. We affirm.

## FACTS

On May 28, 1982, Hagemann's wife used the automobile to drive Alfred Kessler and Kessler's two suitcases containing the electronic testing equipment to Los Angeles International Airport. She left Kessler at the airport and drove the car home. Kessler then checked his luggage for a TWA flight to Zurich, Switzerland at the airline's curbside check-in. The electronic equipment inside the suitcases should have been licensed, in accord with the Controlled Commodities List, 15 C.F.R. § 399.1, 399.2 (1984), which requires such equipment to be licensed by the Department of Commerce if exported to any country except Canada, but the equipment was not licensed. Kessler was subsequently convicted in district court of knowingly exporting equipment without a valid export license in violation of 50 U.S.C.App. § 2410(a) (1982).

Hagemann was convicted in district court of conspiring with Kessler and one Robert Lambert to knowingly export the equipment without a license, in violation of 50 U.S.C.App. § 2410(a) (1982). On May 27,

---

* Hon. Thomas J. MacBride, Senior United States District Judge for the Eastern District of California, sitting by designation.

1982, Lambert delivered some of the electronic testing equipment to Hagemann at Hagemann's place of business. Hagemann transported the equipment to his home the same day.

On May 30, 1982, agents of the United States Customs Service seized Hagemann's car from his home. Hagemann was notified, on June 4, 1982, that his car had been seized pursuant to 22 U.S.C. § 401 (1982).

In a letter of July 30, 1982, he waived his right to have the seizure immediately referred to the United States Attorney in order that the judicial forfeiture proceedings be instituted, and requested administrative consideration of the matter.

Hagemann withdrew his waiver of immediate consideration for proceedings in a letter by his attorney on November 18, 1982. On February 11, 1983, the government filed its complaint for forfeiture of the car in district court. Hagemann answered and filed a claim for the car. The parties filed cross motions for summary judgment. The government's motion was granted, and it took possession of the car pursuant to a court order. Hagemann appealed.

## STANDARD OF REVIEW

 The grant of a summary judgment raises a freely reviewable question of law. *United States v. One 56-Foot Yacht Named the Tahuna*, 702 F.2d 1276, 1280 (9th Cir.1983). On appeal, we will reverse a summary judgment if, viewing the evidence in a light most favorable to the party against whom judgment is granted, the movant failed to establish that there was no genuine issue of material fact, and that he was entitled to judgment as a matter of law. *United States v. One 1977 Mercedes Benz*, 708 F.2d 444, 447 (9th Cir.1983), *cert. denied*, — U.S. —, 104 S.Ct. 981, 79 L.Ed.2d 217 (1984). The propriety of a summary judgment granted under Fed.R. Civ.P. 56 in a forfeiture case must necessarily be evaluated in light of the provisions of the applicable forfeiture statute and the procedural requirements set out therein. *See Tahuna*, 702 F.2d at 1281.

## I. *Seizure of the Automobile*

Hagemann claims that the district court erred in finding that the government was authorized to seize his automobile, under 22 U.S.C. § 401 (1982), when it never contained contraband. He reasons that the electronic testing equipment did not become contraband until Kessler tagged his luggage at the airport. On that basis, he claims that since the equipment was legally possessed by Kessler until that time there was no attempt or intent to export. Therefore, his car had not been used in an illegal exportation that would justify forfeiture.

Section 401(a) provides:

(a) Whenever an attempt is made to export or ship from or take out of the United States any ... articles in violation of law, or whenever it is known or there shall be probable cause to believe that any ... articles are intended to be or are being or have been exported or removed from the United States in violation of law, the Secretary of the Treasury, or any person duly authorized for the purpose by the President, may seize and detain such ... articles and may seize and detain any vessel, vehicle, or aircraft containing the same or which has been or is being used in exporting or attempting to export such ... articles. All ... articles, vessels, vehicles, and aircraft seized pursuant to this subsection shall be forfeited.

In short, Hagemann purports to establish that the exportation process began at the airport and not before. This is contrary to the law.

Under the statute a vehicle is subject to forfeiture when it is used in attempting to export articles in violation of the law. An attempt requires "(1) an intent to engage in criminal conduct and (2) the performance of one or more overt acts which constitute a substantial step towards the commission of the substantive offense." *United States v. Williams*, 704 F.2d 315, 321 (6th Cir.) (attempt to possess cocaine), *cert. denied*, — U.S. —, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983); *see United States v. Mandujano*,

499 F.2d 370, 376 (5th Cir.1974) (attempt to distribute heroin), *cert. denied,* 419 U.S. 1114, 95 S.Ct. 792, 42 L.Ed.2d 812 (1975). In the instant case, the record demonstrates that the evidence was sufficient to establish both elements.

■ First, it is clear that Kessler had the requisite culpable state of mind to export the equipment without a license in violation of the law. The machines were placed in Kessler's suitcases, the suitcases were placed in the car, Kessler and the suitcases were driven to the airport, and Kessler, without deviation proceeded directly to the curbside baggage check-in where the bags were tagged immediately for Zurich. Based on this evidence, it was undisputed that Kessler and the equipment were bound for Zurich, when they entered Hagemann's automobile to be transported to the airport. Hagemann failed to present any evidence to the contrary. Moreover, he, at the time of the forfeiture proceedings, had already been convicted of aiding, abetting, counseling, inducing, and procuring Kessler's illegal exportation of the equipment. This unrefuted evidence and the inferences to be drawn from it are sufficient to establish Kessler's unlawful state of mind.

■ Second, the evidence establishes that overt acts occurred which constituted a substantial step toward the commission of the substantive offense. Kessler put the machines in the car, had them transported to the airport, and thereafter checked for a flight to Zurich. Such acts constitute an attempt because each one is "an act tending toward the accomplishment, and done in part execution of the design to commit a crime." *Giles v. United States,* 157 F.2d 588, 590 (9th Cir.1946), *cert. denied,* 331 U.S. 813, 67 S.Ct. 1197, 91 L.Ed. 1832 (1947). Here the crime is illegal exportation. Exportation occurred as soon as the machines were delivered to a carrier for shipment abroad. *See A.G. Spalding & Bros. v. Edwards,* 262 U.S. 66, 69–70, 43 S.Ct. 485, 486, 67 L.Ed. 865 (1923) (Holmes, J.) (construing U.S. Const., art. I, § 9, cl. 5). In this instance the machines entered the export stream at the baggage check-in at Los Angeles International Airport. It is settled that an international airport is the functional equivalent of a border, and that luggage checked at that point of embarkation is at all times thereafter in international transit. *United States v. Udofot,* 711 F.2d 831, 840 (8th Cir.) (customs search), *cert. denied,* —— U.S. ——, 104 S.Ct. 245, 78 L.Ed.2d 234 (1983). Hence there is no doubt that the four acts above which preceded the exportation that occurred at that point tended toward the accomplishment of the crime. Consequently, it is clear that Kessler attempted to export the machines, and used Hagemann's automobile in that effort.

Our conclusion, moreover, is consistent with the statute and its legislative history. The statute distinguishes between vehicles used in the export of contraband and those used in the attempted export of contraband. 22 U.S.C. § 401(a) (1982). The legislative history further clarifies this difference by distinguishing between a "vehicle ... in which exportation is intended to be accomplished" and a "vehicle ... used in the accomplishment of the illegal exportation," and concludes that both types of vehicles may be seized. *See* H.R. Report No. 1073, 83d Cong., 1st Sess. 3 (incorporating letter from Acting Treasury Sec'y Rose to Senate President), *reprinted in* 1953 U.S.Code Cong. & Ad.News 2386, 2387, 2388. This disposes of Hagemann's contention that only those vehicles in which the contraband is expected to leave the country may be confiscated.

■ We do not need to address the government's broad reading of section 401(a) urged at oral argument that all vehicles in the chain of transport may be confiscated. Only the vehicle delivering the equipment to the airport is involved here. We need go no farther than to hold that section 401(a) can be interpreted as imposing a transactional requirement: a vehicle is "used in the accomplishment of the illegal exportation" if those in control of the vehicle are members of the conspiracy or knowingly permit their vehicles to

be used in the export of contraband. We conclude that this position is well within the intent of section 401(a), and disposes of Hagemann's claim.[1]

This position does not conflict with those cases holding that forfeiture provisions are applicable only when exportation is "imminent" or "about to happen." *See, e.g., United States v. One North American Airplane*, 197 F.2d 635, 639–40 (3d Cir. 1952); *United States v. Moreno*, 182 F.2d 258, 259 (5th Cir.1950). Those cases were decided when section 401(a) explicitly authorized customs officials only to "seize and detain any articles . . . about to be exported or shipped from, or taken out of the United States." Espionage Act of 1917, ch. 30, title VI, § 1, 40 Stat. 223, 224. Each of the courts cited expressly based its decision on this language. *See North American Airplane*, 197 F.2d at 640 ("We conclude that the language of Section 1 leaves us no other alternative than to hold that it is restricted to cases where the goods are 'about to be exported.' "); *Moreno*, 182 F.2d at 259 (the statute requires that "property seized 'shall appear to have been about to be so unlawfully exported' ").

In 1953, the year after *North American Airplane* was decided, this restrictive language was deleted by Congressional amendment. Act of Aug. 13, 1953, ch. 434, § 1, 67 Stat. 577.

■ Since the 1953 amendment, no published cases have applied the "imminency" requirement of the prior statute and we hold that it is no longer a prerequisite to forfeiture.

## II. *Delay in Instituting the Forfeiture Proceedings*

Hagemann also claims that summary judgment should not have been granted against him because there was an issue as to whether the government's eight month delay in instituting forfeiture proceedings

was unreasonable. He asserts that the determination of this matter required an evidentiary hearing. The Mercedes was seized on May 30, 1982, reported to customs officers on June 14, 1982, released to the district seizure custodian on June 17, 1982, and reported to the United States Attorney around February 5, 1983.

Hagemann contends that the district court failed to consider the reasonableness of the delay and should have applied the four-factor balancing test of *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) and *United States v. Eight Thousand Eight Hundred and Fifty Dollars*, 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983), which was applied by this circuit in *Seguin v. Eide*, 720 F.2d 1046 (9th Cir.1983).

■ Hagemann's contention is without merit. The record demonstrates that he waived his right to have the seizure referred to the United States Attorney for judicial forfeiture proceedings in a letter of July 20, 1982. It further demonstrates that Hagemann himself has admitted the waiver. Hence, delay was not an issue between the parties. It could not have precluded summary judgment against Hagemann.

■ Hagemann, however, did withdraw his waiver in a letter dated November 18, 1982, and there was an approximately two month delay from that date until actual referral of the seizure to the United States Attorney around February 5, 1983. But this period of time is insufficient to be presumptively unreasonable and for that reason would not warrant a *Barker v. Wingo* analysis. In *United States v. Nance*, 666 F.2d 353, 360 (9th Cir.), *cert. denied*, 456 U.S. 918, 102 S.Ct. 1776, 72 L.Ed.2d 179 (1982), this court held that a delay of almost five months between an indictment and criminal trial could not "be considered 'presumptively prejudicial,' so as to even

---

**1.** We are not confronted with a case in which the innocence of the claimant is presented as a defense. *But see Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974) (innocence of the owner rejected as a defense to forfeiture proceedings under a Puerto Rican statute).

trigger the balancing [under *Barker v. Wingo* of the other three factors in addition to the length of the delay]."

Since Hagemann couched the issue in terms of an eight month time period and never raised before the district court the issue of whether the two month delay was reasonable, we are not compelled to review it. An issue not raised or objected to below may not ordinarily be raised on appeal. *See Komatsu, Ltd. v. States Steamship Co.*, 674 F.2d 806, 812 (9th Cir.1982).

Viewing all of the evidence in the light most favorable to Hagemann, it is clear that this matter is devoid of any genuine issue of material fact, and that the government was entitled to judgment as a matter of law.

The judgment of the district court is AFFIRMED.

MacBRIDE, District Judge, concurring and dissenting.

I concur fully in Part II of the majority's opinion and in the judgment.

The central problem posed by this appeal is whether 22 U.S.C. § 401(a) authorizes the forfeiture of a vehicle which its operators neither used to carry contraband across an international boundary, nor attempted to use to carry contraband across an international boundary. The statute authorizes the seizure and forfeiture of "any ... vehicle ... which has been or is being used in exporting or attempting to export" articles in violation of law. 22 U.S.C. § 401(a). The claimant's contention is that the forfeiture statute was designed to reach only actual or intended "carrier vehicles", that is, vehicles which carried contraband out of the country, or vehicles which its operators intended to use, and attempted to use, to carry goods out of the country. The argument is not insubstantial. Since the quoted clause was added to the statute in 1953, all the reported cases of forfeiture under its authority have involved the seizure of vehicles which had carried, or which its operators attempted to use to carry, contraband out of the United States. Consequently, the issue posed

here—whether a vehicle not used to carry contraband across an international boundary, and which no one attempted or intended to so use, can nonetheless be held forfeit in the circumstances of this case—is a novel one.

A logical application of this statute must necessarily turn on the content given to the statutory description: "any ... vehicle ... used in exporting" contraband. Given the wording of the statute, in which the provision authorizing seizure of vehicles used "in ... attempting to export" contraband follows within the same prepositional phrase the provision authorizing forfeiture of vehicles "used in exporting" such goods, it is clear that Congress did not intend to attribute to each provision a distinct and independent significance; rather, Congress must have intended the definition of what constitutes a vehicle "used in ... attempting to export" to be wholly dependent upon, and derivative of, the content of the statutory phrase "any ... vehicle ... used in exporting". I think the majority opinion errs in making the implicit contrary assumption. The result is that without any inquiry into the meaning of the statutory description "used in exporting", the majority concludes that the defendant vehicle is properly forfeit as one "used in ... attempting to export" contraband, even though the contraband was in fact unlawfully exported. I fear that the majority's anomalous reasoning will cause confusion in the district courts.

In this case, the district court concluded that the defendant was forfeitable under 22 U.S.C. § 401 since "the vehicle was used in exporting articles in violation of law." *United States v. One 1980 Mercedes Benz 500 SE*, No. CV 83–0875–RJK (C.D.Cal. Jan. 25, 1984). The majority finds no error in that conclusion, but chooses instead to rest its affirmance on the grounds stated. I believe that where, as here, the criminal enterprise accomplished its unlawful aim— the illegal exportation of the contraband— the use of the "attempting to export" provision of § 401(a) is inappropriate. More importantly, I believe that the meaning of

the "attempting to export" provision is wholly derivative of that of the statute's "used in exporting" term. For those reasons, I would directly address, as did the district court, the issue of whether the defendant vehicle, which was used to carry articles intended for illegal export to the point of embarkation, from which the goods were illegally exported, was "used in exporting" contraband. I would hold that it was, and affirm the judgment on that ground.

Where, as here, (1) a vehicle is used to transport articles, intended for export or removal from the United States in violation of law, to the very place, such as a seaport, airport, or international boundary, from which the goods are to be "exported or removed from the United States", and (2) such articles are in fact unlawfully exported, I would conclude that it may be forfeited under § 401(a) as a "vehicle ... used in exporting ... articles" in violation of law.

Congress clearly authorized the forfeiture of actual and intended exporting carriers pursuant to § 401(a). There is no indication, however, that such vehicles were the only ones Congress intended to fall within the statutory compass. Where a vehicle is used to transport goods intended for unlawful removal to the very point from which the exportation is to occur, and where those goods are in fact exported in violation of law, the vehicle's role in the success of the scheme of illegal exportation is too crucial, and its use too intimate to the actual exportation which ensues to believe that Congress intended it to escape forfeiture under § 401(a). As we noted in applying this statute in an earlier case, forfeiture statutes are "not to be construed, like penal laws generally, strictly in favor of the defendant; but they are to be fairly and reasonably construed, so as to carry out the intention of the legislature."

*United States v. Morachis*, 154 F.2d 918, 920 (9th Cir.1946), *quoting United States v. Stowell*, 133 U.S. 1, 12, 10 S.Ct. 244, 246, 33 L.Ed. 555 (1890).

Indeed, the legislative history of amendments made to § 401 in 1953 clearly shows that Congress understood the amendments to provide for the forfeiture not only of a "vehicle ... in which the exportation is intended to be accomplished" but also of a "vehicle ... used in the accomplishment of the illegal exportation." *See* H.R. Report No. 1073, 83d Cong., 1st Sess. 3 (letter from Acting Treasury Sec'y Rose to Senate President), *reprinted in* 1953 U.S.Code Cong. & Ad.News 2386, 2388. While claimant would have us read the latter language to refer solely to exporting carrier vehicles, I cannot do so and give full credit to the stated Congressional purpose, in amending § 401, to "moderniz[e] and strengthen[ ]" the section's provisions relating to the enforcement of the exportation laws.[1] *See id.* at 2, *reprinted in* 1953 U.S.Code Cong. & Ad.News at 2387.

In a case such as this, use of the vehicle provides safe and easy mobility to the point of intended exportation, safeguards and conceals the articles intended for unlawful removal, and substantially contributes to the probability that the unlicensed goods will be removed from the country. In such a case, the automobile is so instrumental and intimately related to the crime of exportation which ensues that it plainly constitutes a vehicle "used in the accomplishment of the illegal exportation", and thus is properly seized and held forfeit under the authority of § 401(a).

For the reasons stated, I would not place reliance on the statute's "used in ... attempting to export" provision. Rather, I would squarely hold with the district court that the defendant was "used in exporting"

---

**1.** The absurdity of the claimant's rationale supports my construction. The case law makes plain that if the defendant were used to transport the unlicensed equipment so much as ten feet over the international border into Mexico, the vehicle could be lawfully seized. Under the claimant's reading of § 401, however, if the car instead drove the articles to within inches of the border, from which point they were unloaded and carried across the border on foot, the car could not be confiscated. I cannot infer such an irrational distinction from the statutory language.

the unlicensed electronic equipment, and thus was properly declared forfeit.