# MONTGOMERY COUNTY, MARYLAND ET AL. v. A SUM OF ONE HUNDRED THREE THOUSAND FOUR HUNDRED TWENTY-EIGHT DOLLARS AND TWENTY-THREE CENTS ET AL.

[No. 166, September Term, 1971.]

*Decided January 17, 1972.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SMITH and DIGGES, JJ.

*John B. Walsh, Jr., Assistant County Attorney,* with whom were *David L. Cahoon, County Attorney, Alfred H. Carter, Deputy County Attorney, Andrew L. Sonner, State's Attorney for Montgomery County, Jeffrey R. Werner, Assistant State's Attorney, Francis B. Burch, Attorney General,* and *James G. Klair, Assistant Attorney General,* on the brief, for appellants.

*Julian B. Stevens, Jr.,* for appellee.

DIGGES, J., delivered the opinion of the Court.

This is an appeal from the Circuit Court for Montgomery County where Judge Levine dismissed a petition for forfeiture filed by Montgomery County against $103,-428.23 in United States currency.[1] Richard P. Rosenberg, appellee, upon claiming that this was his money, was granted permission to intervene. There is no factual dispute here. On February 28, 1970 the Montgomery County Police, pursuant to a search and seizure warrant, raided Rosenberg's house at 13814 Portland Drive, in Rockville and took possession of the $103,428.23 which was found "in close proximity to contraband controlled dangerous substances and controlled paraphernalia." [2] In addition the authorities seized 87 cases of Robitussin A.C., a cough syrup containing the narcotic drug codeine. As a result of this police action Rosenberg was arrested and eventually convicted of criminal charges under Art. 27, § 291 of the Maryland Code (1957, 1967 Repl. Vol.).[3] That section provided:

> "Any store, shop, warehouse, dwelling house, building, vehicle, boat, aircraft, or any place whatever, which is resorted to by narcotic drug addicts for the purpose of using narcotic drugs or which is used for the illegal keeping or selling of the same, shall be deemed a common nuisance. No person shall keep or maintain such common nuisance."

Section 300 makes the violation of § 291 a felony and fixes the penalty. This conviction was based on the statute as it existed when the crime was committed and not

---

1. The State of Maryland joined as a party in the petition seeking forfeiture of the money to Montgomery County. However, we recently held in State v. Greer, 263 Md. 692, 284 A. 2d 233 (1971) that in circumstances where the State was not the seizing authority its presence as a party under Art. 27, § 297 (d) is inconsequential.

2. This investigation was carried out in conjunction with federal authorities who also had a search warrant.

3. See Rosenberg v. State, 12 Md. App. 20, 276 A. 2d 708 (1971), where the Court of Special Appeals upheld the finding of guilt.

on the new "Controlled Dangerous Substances" Act, Ch. 403 of the Laws of Maryland 1970 now codified as Art. 27, §§ 276-302, which became effective July 1 of that year.[4] Following the conviction, appellants in reliance on Art. 27, § 297 (a) (6) of the new law (Ch. 403) filed a petition for forfeiture on 28 October 1970, some eight months after the initial seizure. That section states:

> "(a) *Property subject to forfeiture.* — The following shall be subject to forfeiture and no property right shall exist in them:
>
> . . .
>
> (6) All money or currency which shall be found in close proximity to contraband controlled dangerous substances or controlled paraphernalia or which otherwise has been used or intended for use in connection with the illegal manufacture, distribution, dispensing or possession of controlled dangerous substances or controlled paraphernalia."

Judge Levine held that this newly enacted statute could not be retroactively applied to the facts here and since the old law had no similar provisions for forfeiting money, he dismissed the case. From that decision this appeal ensues.

The County first argues that Ch. 403 should be retroactively applied. However, nothing in the language of the statute itself even remotely supports this rationale and in fact, the unequivocal provisions of § 302 clearly belie this contention. We quote subsection (b):

> "*Civil seizures, forfeitures and injunctive proceedings commenced prior to July 1, 1970.*— Civil seizures or forfeitures and injunctive proceedings commenced prior to July 1, 1970, shall not be affected by these repealers or amendments, or abated by reason, thereof."

---

4. Under Art. 27, § 302 (a) "[p]rosecutions for any violation of law occurring prior to July 1, 1970, shall not be affected by these repealers or amendments, or abated by reason thereof."

While this statement by itself ought to be the complete answer to the petitioner's initial claim, subsection (d) is like frosting on the cake. It relates:

> *"Applicability of subheading.*—The provisions of this subheading shall be applicable to violations of law, seizures and forfeiture, injunctive proceedings, administrative proceedings and investigations which occur following its effective dates."

We see no reason to belabor this point and agree with Judge Levine's holding that the statute by its own terms is not applicable retroactively.

Apparently sensing the futility of its first argument, appellants rely more heavily on its next contention which is that a seizure is "not only an initial physical reduction with custody, but also a continuing state until forfeiture or release." As we understand this claim, a seizure continues in a state of being constantly reseized until there is final disposition of the property; and therefore the statute, though not applicable when the seizure first occurred, can be utilized when the law became effective on July 1, 1970. To bolster this tenuous syllogism, appellants compare seizure to the concept of arrest by stating that "[a]n arrest does not cease with the taking into custody. It continues until release; the person is still considered to be 'under arrest' throughout." We agree in toto with this last statement; however, we do not think it is supportive of the initial premise that a seizure is always in a state of reseizure. The apt analogy for this purpose would seem to be that an individual once arrested is perpetually being rearrested until his release; such reasoning is patently fallacious. To carry this claim to its logical conclusion, laws that restrict the time period in which someone could be detained without being charged would then become pointless. This is true because the time period does not begin until the person is actually in the state of detention and one could argue that at every minute he is being redetained; in essence

the time period begins anew. Likewise, statutes that set forth time limits within which forfeiture petitions must be filed become meaningless. To further pursue appellants' reasoning eventually leads to the ludicrous result that not only do time restrictions never expire, they never actually begin.

The flaw in the County's reasoning here is in not utilizing its previously quoted definition of arrest in discussing seizure. "An arrest does not cease with the taking into custody. It continues until release; the person is still considered to be 'under arrest' throughout." To be consistent appellants should have substituted "seizure" for "arrest" and an accurate analogy would then have been created, *i.e.*, "[a] seizure does not cease with the taking into custody. It continues until release; the [object] is still considered to be 'under seizure' throughout." Just as with an arrest, the state of seizure is continuous, but there is only one act of seizing. The property may be under seizure for an indefinite period, but the actual taking of something into custody is isolated in time. Webster's Third New International Dictionary defines seizure as: "the act or process of seizing or the *state of being seized . . . the act of taking* possession of person or property by virtue of a warrant or by legal authority." (Emphasis added.) This definition does not support appellants' concept of seizure as encompassing constant reseizure. For other definitions see 38A *Words and Phrases,* "Seizure." We find no merit in this claim.

As an adjunct to this last argument the County, in a futile attempt to parry failure, relies on *United States v. 21 Pounds, 8 Ounces of Platinum,* 147 F. 2d 78 (4th Cir. 1945) for assistance, however, any dependence on this decision of the Fourth Circuit is simply misplaced. In that case, the F.B.I. seized some platinum and retained it for use in a criminal prosecution under the Export Control law. Following the criminal proceedings the Collector of Customs took possession of the platinum from the F.B.I. and instituted a forfeiture action under 22 U.S.C.A., §§

401-02. The federal circuit court held that the statutory period of ten days within which a forfeiture petition had to be filed did not start with the first seizure by the F.B.I., but instead when the customs officials took over the property. The court reasoned that the only party involved having authority under the statute to seize the goods for forfeiture was the Collector of Customs and not the F.B.I.[5] As Judge Soper said for the court: "In our opinion, the seizure, as the term is used in the statute, took place in this case when the Collector of Customs took possession of the platinum from the F.B.I. and began proceedings within . . . ten days, looking toward a forfeiture by libel of condemnation." *Id.* at 82. In the situation now before us there has not been a transfer of possession from one governmental agency, without authority to institute forfeiture proceedings, to another agency, having this authority, so as to create a new date of seizure as was true in *Platinum*. In fact, there is no suggestion that the money has ever strayed from the hands of the Montgomery County police since the initial seizure. Therefore the reasoning of *Platinum* is not appropriate to the factual pattern here and our view is buttressed by reference to federal cases which have discussed that decision. See *The Alice,* 78 F. Supp. 741 (D. P.R. 1948) ; *United States v. One Packard Automobile,* 60 F. Supp. 993 (W.D. Tex. 1945). Moreover, under Art. 27, § 297 (d) of the new law, the political subdivision that seized the property is the only party authorized to file the forfeiture petition. *State v. Greer,* 263 Md. 692, 284 A. 2d 233 (1971). We find this claim is also without substance and affirm the trial court's decision.

> *Order affirmed. Costs to be*
> *paid by appellants.*

---

5. According to United States v. 21 Pounds, 8' Ounces of Platinum, supra at 82, "the authority [under 22 U.S.C.A. § 401] to seize and to detain, for purposes of condemnation and forfeiture, was expressly conferred upon the several collectors, comptrollers of customs, surveyors, inspectors of customs and marshals and deputy marshals of the United States, and every other person duly authorized for the purpose by the President."